**Sylvester Lewis ADAMS, Petitioner–Appellant,**

v.

**James AIKEN, Warden, Central Correctional Institution, Respondent–Appellee.**

No. 91–4000.

United States Court of Appeals, Fourth Circuit.

Submitted July 15, 1994.

Decided Dec. 1, 1994.

---

David I. Bruck, Columbia, SC, for appellant.

Donald John Zelenka, Chief Deputy Atty. Gen., Columbia, SC, for appellee.

Before WILKINS, Circuit Judge, and BUTZNER and SPROUSE, Senior Circuit Judges.

Affirmed by published opinion. Senior Judge BUTZNER wrote the opinion, in which Judge WILKINS and Senior Judge SPROUSE joined.

## OPINION

BUTZNER, Senior Circuit Judge:

The Supreme Court in *Adams v. Evatt*, —— U.S. ——, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994), vacated our judgment in *Adams v. Aiken*, 965 F.2d 1306 (4th Cir.1992), and remanded the case to us for further consideration in light of *Sullivan v. Louisiana*, —— U.S. ——, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). After considering the parties' briefs addressing the issues on remand, we affirm the judgment of the district court denying Sylvester Lewis Adams's petition for a writ of habeas corpus.

### I

Adams was convicted in a South Carolina court of kidnapping, housebreaking, and murder and sentenced to death. *Adams*, 965 F.2d at 1309–10, quoted the South Carolina Supreme Court's summary of the facts, and there is no need to repeat the evidence here. *See also State v. Adams*, 279 S.C. 228, 230–31, 306 S.E.2d 208, 209–10 (1983). The prior state court proceedings are also described in *Adams*, 965 F.2d at 1309.

In *Adams*, we held that, tested by *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the trial court's instruction "diluted the reasonable doubt standard and allowed the jury to find Adams guilty by a measure of proof that failed to meet the requirements of the Due Process Clause." *Adams*, 965 F.2d at 1311. Nevertheless, we held that the rule announced in *Cage* was a "new rule" within the meaning of *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and could not be applied retroactively on collateral review. *Adams*, 965 F.2d at 1311–12. Finally, we held that *Cage* did not fall under an exception to the *Teague* bar, and we affirmed the district court's denial of the writ. 965 F.2d at 1312.

### II

The question in *Sullivan* was whether a reasonable doubt instruction that was essentially identical to the one held unconstitutional in *Cage*, 498 U.S. at 41, 111 S.Ct. at 329–30, can be harmless error. Noting that "the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated," the Court reasoned that "the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt." *Sullivan*, —— U.S. at ——, 113 S.Ct. at 2081.

The Court then addressed the question whether an error in a reasonable doubt instruction could be harmless error under *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Reiterating that the harmless error test is "whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error," —— U.S. at ——, 113 S.Ct. at 2081, the Court concluded that, since no actual finding of guilt beyond a reasonable doubt can exist in the case of a constitutionally deficient reasonable doubt instruction, harmless error analysis is impossible to perform. —— U.S. at ——, 113 S.Ct. at 2082. The Court explained that an instructional error that "consists of a misdescription of the burden of proof ... vitiates *all* the jury's findings." This leaves a reviewing court to speculate "what a reasonable jury would have done. And when it does that, the wrong entity judge[s] the defendant guilty." —— U.S. at ——, 113 S.Ct. at 2082 (citation and internal quotation marks omitted).

In addition, the Court noted that denial of the right to a jury verdict of guilt beyond a reasonable doubt is a denial of a fundamental

procedural right and "unquestionably qualifies as 'structural error.'" —— U.S. at ——, 113 S.Ct. at 2083 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

Consequently, the harmless error doctrine cannot save a constitutionally deficient reasonable doubt instruction. We must now decide whether the principles *Sullivan* explains apply to the new rule doctrine as well as the harmless error doctrine.

### III

■ *Teague* prohibits the retroactive application of new rules to cases brought on collateral review. 489 U.S. at 305–10, 109 S.Ct. at 1072–75. *Sullivan* does not call into question the validity of our determination that the rule announced in *Cage* was a new rule. In *Teague*, the Court stated that a case announces a new rule "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301, 109 S.Ct. at 1070. Later, the Court expanded the definition to include any rule that is "susceptible to debate among reasonable minds." *Butler v. McKellar*, 494 U.S. 407, 415, 110 S.Ct. 1212, 1217, 108 L.Ed.2d 347 (1990).

Whether a trial court's unconstitutional misdescription of the burden of proof in a criminal case violates the Due Process Clause was certainly an open question before *Cage*. In *Victor v. Nebraska*, —— U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994), the Court noted: "In only one case have we held that a definition of reasonable doubt violated the Due Process Clause." —— U.S. at ——, 114 S.Ct. at 1243. That case, the Court said, was *Cage*. *Victor* confirms our holding that *Cage* announced a new rule.

### IV

■ What *Sullivan* does cast into doubt is our holding that a *Cage* error does not qualify for retroactive application under the second *Teague* exception. This exception provides that "a new rule should be applied retroactively if it requires the observance of those procedures that are implicit in the concept of ordered liberty." 489 U.S. at 311,

109 S.Ct. at 1076 (citation and internal quotation marks omitted). The exception is limited to "those new procedures without which the likelihood of an accurate conviction is seriously diminished." 489 U.S. at 313, 109 S.Ct. at 1077. In *Sawyer v. Smith*, 497 U.S. 227, 110 S.Ct. 2822, 111 L.Ed.2d 193 (1990), the Court emphasized that to qualify under *Teague*'s second exception a rule "must not only improve accuracy, but also alter our understanding of the *bedrock procedural elements* essential to the fairness of a proceeding." 497 U.S. at 242, 110 S.Ct. at 2831 (citations and internal quotation marks omitted).

In view of these explanations of *Teague*'s second exception, the question arises whether the remedy for an unconstitutional reasonable doubt instruction should be applied retroactively. The answer is found in *Sullivan*'s explanation of the crippling effects of such an instruction: "a misdescription of the burden of proof . . . vitiates *all* the jury's findings." —— U.S. at ——, 113 S.Ct. at 2082. Without a jury's constitutional finding of guilt, a conviction lacks both "accuracy" and one of the "*bedrock procedural elements* essential to the fairness of the proceeding." *Sawyer*, 497 U.S. at 242, 110 S.Ct. at 2831.

*Sullivan* also describes denial of a right to a jury verdict of guilt beyond a reasonable doubt as a "structural" error. —— U.S. at ——–—— and ——–——, 113 S.Ct. at 2082–83 and 2083–84 (Rehnquist, C.J., concurring). In the context of harmless error doctrine, the Supreme Court has stated that a criminal trial infected by a structural error "cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991) (citation and internal quotation marks omitted).

In light of *Sullivan*, a constitutionally deficient reasonable doubt instruction not only dilutes the standard of proof beyond a reasonable doubt mandated by *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), but it also prevents a jury verdict of guilty from coming into existence. This failure is a breach of the right to a trial by jury,

resulting in a lack of accuracy and the denial of a bedrock procedural element essential to fairness. It is also a structural error that deprives a defendant of a fundamentally fair trial. Consequently, the rule that a constitutionally deficient reasonable doubt instruction violates the Due Process Clause satisfies *Teague*'s second exception. It should be applied retroactively.

## V

Originally, we held that the trial court's reasonable doubt instruction in petitioner's case unconstitutionally reduced the government's burden of proof. *Adams,* 965 F.2d at 1311. Because the Supreme Court's remand order instructs us to reconsider our prior decision in light of *Sullivan,* Adams claims the Supreme Court wished us only to reconsider our *Teague* analysis. He protests that we should not disturb our holding that the reasonable doubt instruction in his case was unconstitutional. He points out that after initially denying certiorari, *Adams v. Evatt,* —— U.S. ——, 113 S.Ct. 2966, 125 L.Ed.2d 666 (1993), the Court granted rehearing and remanded the case. *Adams v. Evatt,* —— U.S. ——, 114 S.Ct. 1365, 128 L.Ed.2d 42 (1994). This occurred after the Court had decided two cases, *Victor v. Nebraska* and *Sandoval v. California,* —— U.S. ——, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994), that addressed challenges to reasonable doubt instructions. Because the Supreme Court's order of remand did not refer to *Victor* and *Sandoval,* Adams draws from the order an inference that the Court implicitly validated our holding that the instruction violated Adams's right to due process.

We are not persuaded by Adams's argument. An inference drawn from the sequence of the Supreme Court's decisions is an inadequate basis on which to rest the conclusion that the Court summarily approved our ruling that the instruction given in *Adams* was unconstitutional. Inasmuch as the Supreme Court vacated our judgment, we are not precluded from reconsidering this issue in the light of the Court's most recent opinion. *See Johnson v. Board of Education,* 457 U.S. 52, 53–54, 102 S.Ct. 2223, 2224–25, 72 L.Ed.2d 668 (1982); *Smith v.*

*Bounds,* 813 F.2d 1299, 1304 (4th Cir.1987). If in due course the Supreme Court reviews this opinion, it will surely turn to its current precedent. We should now do the same.

## VI

In *Victor,* the Court held that the proper standard for measuring the constitutional validity of a jury instruction is "whether there is a reasonable likelihood" that the jury applied the instruction in an unconstitutional manner. —— U.S. at ——, 114 S.Ct. at 1243; *see also Estelle v. McGuire,* 502 U.S. 62, —— n. 4, 112 S.Ct. 475, 482 n. 4, 116 L.Ed.2d 385 (1991); *Boyde v. California,* 494 U.S. 370, 380–81, 110 S.Ct. 1190, 1197–98, 108 L.Ed.2d 316 (1990). *Victor* and *McGuire* repudiated the test used by the Court in *Cage,* "how reasonable jurors could have understood the charge as a whole." *Cage,* 498 U.S. at 41, 111 S.Ct. at 329.

In *Cage,* the trial court defined reasonable doubt as follows:

> This doubt, however, must be a reasonable one; that is one that is founded upon a real tangible substantial basis and not upon mere caprice and conjecture. *It must be such doubt as would give rise to a grave uncertainty,* raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof. A reasonable doubt is not a mere possible doubt. *It is an actual substantial doubt.* It is a doubt that a reasonable man can seriously entertain. What is required is not an absolute or mathematical certainty, but a *moral certainty.*

*Cage,* 498 U.S. at 40, 111 S.Ct. at 329 (citing *State v. Cage,* 554 So.2d 39, 41 (La.1989) (emphasis supplied by Supreme Court)). The Supreme Court held that given the terms "substantial" and "grave," together with the reference to "moral certainty," a reasonable juror "could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause." 498 U.S. at 41, 111 S.Ct. at 329–30. The Court did not address the question whether the distinguishing words "mere caprice and conjecture" conveyed to the jury the necessity of a

"near certitude" of guilt. *Victor*, —— U.S. at ——, 114 S.Ct. at 1247 (citation omitted). Our analysis did not include this inquiry. *See Adams*, 965 F.2d at 1311.

In *Victor*, the Supreme Court upheld the validity of the trial court's definition of reasonable doubt. There, the trial court had stated:

> "Reasonable doubt" is such a doubt as would cause a reasonable and prudent person, in one of the graver and more important transactions of life, to pause and hesitate before taking the represented facts as true and relying and acting thereon. It is such a doubt as will not permit you, after full, fair, and impartial consideration of all the evidence, to have an abiding conviction, *to a moral certainty*, of the guilt of the accused. At the same time, absolute or mathematical certainty is not required. You may be convinced of the truth of a fact beyond a reasonable doubt and yet be fully aware that possibly you may be mistaken. You may find an accused guilty upon the *strong probabilities of the case*, provided such probabilities are strong enough to exclude any doubt of his guilt that is reasonable. A reasonable doubt is an *actual and substantial doubt* arising from the evidence, from the facts or circumstances shown by the evidence, or from the lack of evidence on the part of the state, as distinguished from a doubt arising from mere possibility, from bare imagination, or from fanciful conjecture.

—— U.S. at ——, 114 S.Ct. at 1249 (emphasis added by Supreme Court).

The Court distinguished the instructions in *Victor* from those in *Cage* on the ground that the questionable words and phrases in *Victor* were neutralized by their context. The Court noted that in *Victor*, "substantial doubt" was directly contrasted with "mere possibility," "bare imagination," and "fanciful conjecture." —— U.S. at ——, 114 S.Ct. at 1250. The Supreme Court also noted that the trial court's use of "substantial doubt" was mitigated by the use of the "hesitate to act" test, which the Court stated gives a jury a proper "common-sense benchmark" of reasonable doubt. —— U.S. at ——, 114 S.Ct. at 1250.

The requirement of "moral certainty" was alleviated by its reference to the need for an "abiding conviction" of the defendant's guilt, as well as by the instruction that the jurors should base their verdict on the evidence presented, rather than on "speculation, conjectures, or inferences not supported by the evidence." —— U.S. at —— – ——, 114 S.Ct. at 1250–51 (citation and internal quotation marks omitted). The phrase "moral certainty" was also mitigated by the "hesitate to act" test. —— U.S. at —— – ——, 114 S.Ct. at 1250–51.

The trial court's reference to "strong probabilities" was not error, since the same sentence told the jury that the probabilities must be strong enough to prove the defendant's guilt beyond a reasonable doubt. —— U.S. at ——, 114 S.Ct. at 1251.

The Supreme Court analyzed the companion case, *Sandoval v. California*, in much the same way. There, the trial court had instructed:

> Reasonable doubt is defined as follows: It is *not a mere possible doubt*; because everything relating to human affairs, and *depending on moral evidence*, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, *to a moral certainty*, of the truth of the charge.

—— U.S. at ——, 114 S.Ct. at 1244 (emphasis added by Supreme Court). The Supreme Court held that in *Sandoval*, as in *Victor*, the context of the instruction eliminated any concern that constitutional error might occur. The Court noted that the use of "abiding conviction" to describe "moral certainty" and the instruction that the jurors must base their verdict upon "the entire comparison and consideration of all the evidence," protected against any deficiency in the reasonable doubt instruction. —— U.S. at —— – ——, 114 S.Ct. at 1247–48.

## VII

In *Adams,* the Court instructed the jury as follows:

> The state does have the burden of proving the defendant guilty beyond a reasonable doubt on each indictment. I charge you that the defendant is entitled to any reasonable doubt arising in the whole case or arising on any defense that may have been set up by the defendant. If upon the whole case you have a reasonable doubt as to the guilt of the defendant, he's entitled to that doubt and would be entitled to an acquittal. Likewise, if you have a reasonable doubt as to whether or not the defendant has made out any of his defenses, then he would be entitled to an acquittal. Now I do not mean, ladies and gentlemen, by the term reasonable doubt that it is some whimsical or imaginary doubt. It is not a weak doubt, it is not a slight doubt. It is a substantial doubt, a doubt for which you can give a reason. It is a substantial doubt arising out of the testimony or lack of testimony in the case for which a person honestly seeking to find the truth can give a reason. If you have such a doubt in your mind as to whether or not the State has proven this defendant guilty, you should resolve that doubt in his favor and write a verdict of not guilty and acquit him.

In addressing circumstantial evidence the court gave the following instruction:

> Circumstantial evidence is good evidence provided it meets the tests laid down by the law. The State can rely on circumstantial evidence and must prove the circumstance relied on beyond a reasonable doubt. The circumstances must be consistent with one another, and they must point conclusively to the guilt of the accused, to the exclusion of every other reasonable hypothesis. In other words, in the consideration of circumstantial evidence the jury must seek some reasonable explanation thereof other than the guilt of the accused. And if such reasonable explanation can be found, you cannot convict on such evidence. I charge you further that the mere fact that the circumstances are strongly suspicious and the defendant's guilt probable is not sufficient to sustain a conviction only on the basis of circumstantial evidence, because the proof offered by the State must exclude every reasonable hypothesis except that of guilt and must satisfy the jury beyond a reasonable doubt.

> As I think I've indicated to you reasonable—what reasonable doubt means: I would tell you that the two phrases reasonable doubt and proof to a moral certainty are synonymous and the legal equivalent of each other. These phrases connote, however, a degree of proof distinguished from an absolute certainty. The reasonable doubt that the law gives the accused is not a weak or a slight doubt, but a serious or strong and well-founded doubt as to the truth of the charge.

> I charge you further that suspicion, however strong, does not suffice to sustain conviction. And possible or probable guilt will not sustain conviction.

The instructions contain some of the deficiencies noted in *Cage. See Adams,* 965 F.2d at 1310, 1311. Nevertheless, we must now reconsider the instructions in light of the standard and the analysis that the Court used in *Victor* and *Sandoval.*

■ *Adams* equated reasonable doubt with "substantial doubt," an ambiguous term that might well confuse a jury. But in *Adams* the term was directly preceded by two sentences that provided the concrete distinguishing terms "whimsical," "imaginary," "weak," and "slight" doubt. This strong distinction, lacking in *Cage,* was present in *Victor,* where the Court held that contrasting a substantial doubt with a doubt arising from "bare imagination" or from "fanciful conjecture" removed any ambiguity from the term "substantial doubt." —— U.S. at ——, 114 S.Ct. at 1250.

■ Nor is the instruction on circumstantial evidence fatally defective because it equates reasonable doubt with proof to a "moral certainty." While this term has historical precedent, its use may be confusing and dilute reasonable doubt. In *Victor,* the term "moral certainty" was mitigated by the phrase "an abiding conviction of the defendant's guilt" and the "hesitate to act" test. —— U.S. at —— ——, 114 S.Ct. at 1250–

51. These alternative definitions of reasonable doubt do not appear in either *Cage* or in *Adams*.

*Victor* also held, however, that any ambiguity in the term "moral certainty" was eliminated by the trial court's admonishing the jury to evaluate the case on the evidence presented. —— U.S. at ——, 114 S.Ct. at 1251. Likewise, the use of "moral certainty" in *Sandoval* was neutralized by the court's instruction that the jury decide the case on the evidence, rather than "sentiment, conjecture, sympathy, passion, prejudice, public opinion, or public feeling." —— U.S. at ——, 114 S.Ct. at 1248. Similar instructions in *Adams* ameliorate that court's use of "moral certainty."

The *Adams* court instructed the jury that, in order for it to find guilt, the circumstances of the case "must point conclusively to the guilt of the accused" and that "the proof offered by the State must exclude every reasonable hypothesis except that of guilt." Given these instructions, there was not a reasonable likelihood that the jury believed it could decide the case on anything other than the evidence presented or find guilt on any basis other than proof beyond a reasonable doubt.

A significant vice in *Cage* is explained by the following passage in *Victor*: "[W]e were concerned that the jury would interpret the term 'substantial doubt' in parallel with the preceding reference to 'grave uncertainty,' leading to an overstatement of the doubt necessary to acquit." —— U.S. at ——, 114 S.Ct. at 1250. Neither *Victor* nor *Adams* contains the phrase "grave uncertainty." Although in *Adams* we said that the words "serious or strong and well-founded" conveyed the same meaning, 965 F.2d at 1311, we made this observation without employing *Victor*'s analysis. *Victor* explains that the offending words can be neutralized by words or phrases that preclude the jury from requiring more than a reasonable doubt to acquit. The instruction in *Adams,* like the one in *Victor,* used distinguishing words and phrases, such as imaginary, slight, and weak, sufficient to correct any misconception that conviction could rest on less than proof beyond a reasonable doubt.

Considering the questionable or objectionable terms in *Adams* in the context of the entire instructions on reasonable doubt and in accordance with the standard and the analysis the Court used in *Victor,* we conclude that there is not a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to establish guilt beyond a reasonable doubt. *See Victor,* —— U.S. at ——, 114 S.Ct. at 1243.

*AFFIRMED.*