**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRANK MIDDLETON, JR.,
Petitioner-Appellant,

v.

PARKER EVATT, Commissioner,

No. 94-4015

South Carolina Department of
Corrections; T. TRAVIS MEDLOCK,
Attorney General, State of South
Carolina,
Respondents-Appellees.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Solomon Blatt, Jr., Senior District Judge.
(Ca-92-944-3-8AJ)

Argued: September 27, 1995

Decided: February 14, 1996

Before WILKINS, NIEMEYER, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Isaac Bruck, Columbia, South Carolina, for Appel-
lant. Donald John Zelenka, Assistant Deputy Attorney General,
Columbia, South Carolina, for Appellees. **ON BRIEF:** John H.
Blume, POST CONVICTION DEFENDER ORGANIZATION OF

SOUTH CAROLINA, Columbia, South Carolina; Philip W. Horton, Kathleen A. Behan, ARNOLD & PORTER, Washington, D.C., for Appellant. Lauri J. Soles, Assistant Attorney General, Columbia, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Frank Middleton of murder, criminal sexual conduct, and armed robbery and sentenced him to death. Raising numerous challenges to his sentence, Middleton unsuccessfully sought a writ of habeas corpus from the United States District Court for the District of South Carolina. See 28 U.S.C.A. § 2254 (West 1994). Middleton appeals, again challenging the imposition of the death penalty. We affirm the denial of the writ.

I.

In 1984, Middleton escaped from prison and murdered Janell Garner and Shirley Mack. For purposes of the instant appeal, we are concerned only with Middleton's prosecution, conviction, and death sentence for the murder, criminal sexual conduct, and armed robbery of Mack. After a jury convicted Middleton, and he was sentenced to death for Mack's murder, the Supreme Court of South Carolina affirmed the convictions and sentence, and the Supreme Court of the United States declined to issue a writ of certiorari. See State v. Middleton, 368 S.E.2d 457 (S.C.) (Middleton I), cert. denied, 488 U.S. 872 (1988). Subsequently, Middleton sought post-conviction relief. The state post-conviction relief (PCR) court denied his petition, with prejudice, in its entirety, concluding that it was without merit. The Supreme Court of South Carolina denied his petition, as did the Supreme Court of the United States, see 502 U.S. 854 (1991).

2

Thereafter, Middleton filed a petition for a writ of habeas corpus in federal district court, alleging that the imposition of the death penalty was unconstitutional on a number of grounds: (1) the jury instructions respecting the aggravating circumstances violated the Ex Post Facto and Due Process Clauses; (2) his state trial counsel was ineffective, in violation of the Sixth and Fourteenth Amendments; (3) the state trial judge erred in failing to instruct the jury sua sponte at the sentencing phase of Middleton's trial that it could draw no adverse inference from his failure to testify, in violation of the Fifth and Fourteenth Amendments; (4) the jury did not realize that it was responsible for imposing the death penalty, in violation of the Eighth and Fourteenth Amendments; (5) the jury instructions regarding reasonable doubt lowered the State's burden of proving guilt beyond reasonable doubt, in violation of the Fifth and Fourteenth Amendments; and (6) the jury instructions with respect to mitigating circumstances misled the jury into concluding that a finding of mitigating circumstances had to be unanimous, in violation of the Eighth and Fourteenth Amendments.

The district court referred Middleton's petition to a magistrate judge, see 28 U.S.C.A. § 636(b)(1)(B) (West 1993), who rejected all of Middleton's challenges and recommended that summary judgment be granted in favor of the State. After a hearing on the petition and de novo review of the magistrate judge's recommendation, the district court concluded that Middleton was not entitled to a writ of habeas corpus. See Middleton v. Evatt, 855 F. Supp. 837 (D.S.C. 1994) (Middleton II). Middleton challenges the district court's ruling on numerous grounds. We address Middleton's contentions seriatim. Successive courts freely review the denial of a writ of habeas corpus and mixed questions of fact and law, see Washington v. Murray, 4 F.3d 1285, 1288 (4th Cir. 1993), but the factual findings of the state court are presumed correct, see 28 U.S.C.A.§ 2254(d).

II.

Middleton first contends that the jury instructions respecting the aggravating circumstances of armed robbery and rape violated the Due Process Clause, arguing that the state trial court improperly instructed the jury to weigh the aggravating circumstances against the mitigating circumstances. To resolve this issue, we must determine

3

whether the challenged jury instructions regarding imposition of the death penalty based on aggravating circumstances were improper. South Carolina law provides for the death penalty if a single aggravating circumstance exists. See S.C. Code Ann.§ 16-3-20(C) (Law. Co-op. Cum. Supp. 1994). Armed robbery and criminal sexual conduct, both of which Middleton committed according to the jury, are aggravating factors supporting imposition of the death penalty. See S.C. Code Ann. § 16-3-20(C)(a)(1)(a), (d). Under South Carolina law, a jury need not, and indeed should not, weigh the aggravating circumstances against the mitigating circumstances. See State v. Bellamy, 359 S.E.2d 63, 65 (S.C. 1987), overruled in part on other grounds by State v. Torrence, 406 S.E.2d 315 (S.C. 1991). Rather, "[t]he jury should be instructed to `consider' any mitigating circumstances as well as any aggravating circumstances." Id. South Carolina, therefore, is not a "weighing" state. Compare Sochor v. Florida, 504 U.S. 527, 532-33 (1992) (noting the differences between weighing states and non-weighing states and explaining that in a weighing state like Florida, the jury is instructed to weigh aggravating circumstances against mitigating circumstances and noting further that in a weighing state if a jury considers an invalid aggravating circumstance in determining to impose the death penalty, an Eighth Amendment violation occurs), with Zant v. Stephens, 462 U.S. 862, 873-74 (1983) (discussing that in Georgia, a non-weighing state like South Carolina, the jury is not to assign any special weight to aggravating circumstances and that the death penalty can, under certain circumstances, be properly imposed despite the jury's consideration of an improper aggravating circumstance).

In Boyde v. California, 494 U.S. 370, 378 (1990), the Court explained that jury instructions are not viewed in a vacuum but must be examined based on the overall charge. According to the Court, in examining jury instructions that may be "ambiguous and therefore subject to an erroneous interpretation," the relevant inquiry "is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." Id. at 380; see also Estelle v. McGuire, 502 U.S. 62, 72 & n.4 (1991) (reaffirming the Boyde analysis for examining jury instructions and applying it in a habeas proceeding). Similarly, in Victor v. Nebraska, 114 S. Ct. 1239, 1251 (1994), the Court concluded that the standard for reviewing the con-

4

stitutionality of jury instructions is whether there is a "reasonable likelihood that the jurors . . . applied the instructions in a way that violated the Constitution." Victor explained that offending language in jury instructions can be neutralized by language that explains the proper duty of the jury.

With these principles in mind, we examine the challenged jury instructions, which provided in pertinent part:

> [R]ape, which means criminal sexual conduct, first degree . . . .
>
> . . . .
>
> . . . [Y]ou may consider the following statutory aggravating circumstance: One, murder was committed while in the commission of the following crimes or acts: Criminal sexual conduct, first degree, and or armed robbery.
>
> . . . .
>
> Now, should you find beyond a reasonable doubt that one of the circumstances listed on this sheet of statutory instructions existed at the time of the murder, and should you then decide after weighing such finding against the elements in favor of a recommendation of life imprisonment about which I will instruct you later, then the recommendation of the jury is to be that [Middleton] be sentenced to death.
>
> . . . .
>
> In reaching your decision as to which sentence to recommend, you will weigh the aggravating and mitigating circumstances.
>
> . . . .
>
> In your deliberations you will consider any statutory or non-statutory mitigating circumstance which are[sic] sup-

5

ported by the evidence. You will weigh the aggravating cir-
cumstance or circumstances you found against the
mitigating circumstance, and you will then decide whether
you will recommend the death penalty or life imprisonment.

You may also consider any other factor in mitigation of
the offense, and you can recommend a sentence of life
imprisonment for no reason at all.

(J.A. at 1502-08.) Here, the state trial judge erroneously used the
word "weigh" when instructing the jury concerning aggravating and
mitigating circumstances, but, as explained below, when viewed in
context, there is no reasonable likelihood that the jury misunderstood
the instructions.

As the Supreme Court of South Carolina explained on direct
appeal, while the trial judge should not have used the word "weigh,"
"[h]e clearly instructed the jury, however, it could consider any other
factor in mitigation and could recommend a life sentence for no rea-
son at all. Considering the charge as a whole, we find no error."
Middleton I, 368 S.E.2d at 460. We agree with the Supreme Court of
South Carolina and conclude that, based on the instructions as a
whole, the jury understood the term "weigh" to mean that the jury was
to consider both aggravating and mitigating circumstances. Cf. Adams
v. Aiken, 41 F.3d 175, 179-82 (4th Cir. 1994) (applying the analysis
of Victor and Boyde to defective jury instructions and holding that the
instructions were not "fatally defective" because there was no reason-
able likelihood that the jury misapplied the instructions), cert. denied,
115 S. Ct. 2281 (1995). We find no due process violation. There is
no reasonable likelihood that the jury applied the instructions in an
unconstitutional manner.

III.

Middleton next posits that the Ex Post Facto Clause was violated
because the jury instructions at the sentencing phase of his trial con-
cerning South Carolina's criminal sexual conduct laws in relation to
aggravating circumstances for imposing the death penalty were
improper. Middleton contends that the state trial court's instructions
retroactively applied a definition of "criminal sexual conduct" that

6

was inapplicable at the time of the murder. Also, Middleton contends that if the Supreme Court of South Carolina retroactively applied a judicially-adopted definition of "rape" that subsumed the definition of "criminal sexual conduct," then the Due Process Clause was violated because the death penalty is being imposed based on improper jury instructions. To establish a violation of the Ex Post Facto Clause, Middleton must demonstrate that any change in the law retroactively alters the definition of criminal conduct or increases the penalty by which a crime is punishable. See Collins v. Youngblood, 497 U.S. 37, 49-52 (1990). To resolve this claim, we must examine the history of the South Carolina death penalty and criminal sexual conduct statutes and the challenged jury instructions.

When Middleton murdered Mack in June 1984, South Carolina law provided by statute that rape during the course of a murder was an aggravating circumstance. See S.C. Code Ann.§ 16-3-20(C)(a)(1)(a) (Law. Co-op. 1976). Under South Carolina law, rape required that the defendant have "carnal knowledge" of the victim, i.e., that the male genital organ penetrate the female genital organ. See State v. Fleming, 175 S.E.2d 624, 626-27 (S.C. 1970). In 1977, the General Assembly of South Carolina amended the laws regarding sexual conduct and replaced the definition of "rape" with "criminal sexual conduct," statutorily defined in part as "sexual battery," which included "cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . ." See 1977 S.C. Acts 157.

When Middleton committed the crimes, however, the death penalty statute provided that "rape," with its concomitant carnal knowledge requirement, not "criminal sexual conduct," was an aggravating circumstance. The death penalty statute did not specifically incorporate the criminal sexual conduct amendments until June 1986. Thus, in June 1984, the death penalty statute provided in pertinent part:

> (C) The judge [or jury shall consider] . . . any of the following statutory aggravating . . . circumstances . . . .:
>
> (a) Aggravating circumstances:
>
> (1) Murder was committed while in the commission of the following crimes or acts: (a) rape,

7

>        (b) assault with intent to ravish, (c) kidnapping, (d)
>        burglary, (e) robbery while armed with a deadly
>        weapon . . . .

S.C. Code Ann. § 16-3-20(C)(a)(1) (Law. Co-op. 1976). Not until 1986 did the aggravating circumstances section of the statute substitute the term "criminal sexual conduct in any degree" for the term "rape" and delete the phrase "assault with intent to ravish."

According to Middleton, because the death penalty statute was not amended until 1986 to substitute "criminal sexual conduct" for "rape," he cannot be sentenced to death because the state failed to prove he had carnal knowledge of Mack, which was required to sustain a rape conviction prior to the amendments. Middleton contends, therefore, that his criminal sexual conduct thus could not have been an aggravating circumstance. According to Middleton, the State's attempt to impose the death penalty on that basis violates the Ex Post Facto Clause.

The Supreme Court of South Carolina addressed the interplay of the terms "rape" and "criminal sexual conduct" in State v. Stewart, 320 S.E.2d 447 (S.C. 1984). Relying on State v. Elmore, 308 S.E.2d 781 (S.C. 1983) (per curiam), overruled in part on other grounds by State v. Torrence, 406 S.E.2d 315 (S.C. 1991), the Stewart court explained that the terms "criminal sexual conduct" and "rape" were synonymous:

>        In [Elmore], this Court held that the legislature intended the
>        terms "rape" and "criminal sexual conduct" be interchange-
>        able. Likewise, "assault with intent to ravish" and "assault
>        with intent to commit criminal sexual conduct" are inter-
>        changeable. We conclude the aggravating circumstances of
>        rape and assault with intent to ravish do not require as an
>        essential element the intent to accomplish penetration by the
>        male genital organ.

Stewart, 320 S.E.2d at 451. At first blush, Stewart appears to resolve conclusively this issue against Middleton, but a close examination of Stewart does not support this conclusion because Stewart was delivered in September 1984, and Middleton committed the crime in June

8

1984. Hence, Stewart provides no basis for concluding that the aggravating circumstance of "rape" had been construed not to require carnal knowledge prior to Middleton's crime. We, therefore, must consult Elmore.

In 1983 -- one year before Middleton murdered Mack-- the Supreme Court of South Carolina opined in Elmore :

> S.C. Code Ann. (1976) § 16-3-20(c)(a) lists rape as one of the aggravating circumstances which would allow consideration of the death penalty. Subsequent to the enactment of this statute the legislature enacted S.C.Code Ann.§ 16-3-651 et seq. (1976 as amended) which established three degrees of the crime of criminal sexual conduct. First degree criminal sexual conduct requires proof of sexual battery, which by S.C. Code Ann. § 16-3-351(h) (1982 Cum. Supp.) is defined in pertinent part as "sexual intercourse, . . ., or any intrusion, . . . of any part of a person's body or of any object into the genital or anal openings of another person's body . . ." Rape, which is still considered an aggravating circumstance under S.C.Code Ann. § 16-3-20(C)(a) requires carnal knowledge.
>
> It is evident that it was the intent of the legislature that these terms be interchangeable and that criminal sexual conduct be an aggravated circumstance.
>
> We hold a conviction of criminal sexual conduct in any degree constitutes the offense of rape where the facts on which the conviction was based are sufficient to support a conviction under the previous statutory or common law offense of rape.

Elmore, 308 S.E.2d at 785 (citations omitted) (emphasis added).

The State contends that under Elmore, the terms "rape" and "criminal sexual conduct" are synonymous; accordingly, Middleton committed a crime that constituted an aggravating circumstance and thus was eligible for the death sentence. According to the State, if the stat-

9

utory amendments changed the law regarding rape or criminal sexual conduct, that change was recognized judicially in 1983. Because Middleton committed his crimes and was prosecuted in 1984, there was no retroactive application; hence, there is no ex post facto violation. Finally, as the State notes, the state PCR court and the magistrate judge relied on Elmore to conclude that Middleton's Ex Post Facto claim has no merit.

Elmore, however, provides no solace for the State's contention. While Elmore acknowledged that the General Assembly of South Carolina intended that "rape" and "criminal sexual conduct" be synonymous and used interchangeably, Elmore recognized further that criminal sexual conduct could satisfy the aggravating circumstance of rape, provided the underlying conduct also supported a conviction under the prior rape statute or the common-law definition of rape. Because Elmore explained that criminal sexual conduct that constituted "rape" under prior law will support a conclusion of the aggravating circumstance of rape, Elmore cannot be read to hold that all degrees of criminal sexual conduct will satisfy the aggravated circumstance of rape prior to the statutory amendments in 1986.[1]

_____

[1] The State argues that even maintaining the distinction between "rape" and "criminal sexual conduct," i.e., the carnal knowledge requirement, Middleton raped Mack; thus, he was properly sentenced to death. In his confession, Middleton stated, "I did screw her." (J.A. at 919.) A law enforcement officer testified that Middleton made the following oral confession to him:

> I did do something to her. . . . [W]ell, like, man, you know, it's kind of hard and I wanted some ass so I grab and got a piece of ass, and [Middleton told me] like I pull her and like I push her down, and like I got piece of ass . . . .

(J.A. at 967.) Dr. Sandra Conradi testified that the victim was wearing a bra and jacket, but was otherwise unclothed and that the acid phosphate levels in her mouth were three times greater than the normal acidity level, which revealed a possibility of oral sex. Based on all of this evidence, the Supreme Court of South Carolina stated:

> [Middleton's] statement indicated he had sexual relations with the victim. The State's pathologist testified a chemical analysis of the victim's mouth revealed fellatio had occurred. Vaginal

10

Here, the jury instructions respecting rape provided in pertinent part:

> [R]ape, which means criminal sexual conduct, first degree
> . . . .
>
> . . . .
>
> . . . [Y]ou may consider the following statutory aggravating circumstance: One, murder was committed while in the commission of the following crimes or acts: Criminal sexual conduct, first degree, and or armed robbery.

(J.A. at 1502.) Even if we were to assume that the jury instructions were erroneous, we conclude that any error was harmless. A writ of habeas corpus is inappropriate unless the jury instructions "`had a substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 113 S. Ct. 1710, 1722 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).

In Zant, the Supreme Court held that if one aggravating factor supports a death sentence and the jury need not weigh it against mitigat-

_____

> intercourse was not excluded although there was no evidence of vaginal trauma. At the guilt phase of trial, appellant was convicted of first degree criminal sexual conduct. The same evidence supporting the conviction for first degree criminal sexual conduct supports submission of the aggravating circumstances of rape.

Middleton I, 368 S.E.2d at 460. The state PCR court found that Middleton raped Mack:

> In [Middleton's] confession, he states, "I did screw her. It took about eight minutes." I take judicial notice that "screw" in the vernacular means genital sex. This was accomplished, according to [Middleton's] confession, after the victim had taken her clothes off at knife point. A rational finder of act could conclude that this act was rape, as defined in the common law.

(J.A. at 316-17.)

11

ing factors, as in South Carolina, the sentence need not be vacated merely because the jury also found an invalid aggravating factor. See Zant, 462 U.S. at 884. Thus, even if an invalid factor, e.g., criminal sexual conduct, is considered in tandem with a valid factor, e.g., armed robbery, the death penalty nevertheless can be imposed. Recently, in the context of examining jury instructions concerning aggravating factors in non-weighing states, the Court explained:

> Zant was thus predicated on the fact that even after elimination of the invalid aggravator, the death sentence rested on firm ground. Two unimpeachable aggravating factors remained and there was no claim that inadmissible evidence was before the jury during its sentencing deliberations or that the defendant had been precluded from adducing relevant mitigating evidence.

Tuggle v. Netherland, 116 S. Ct. 283, 285 (1995) (per curiam). According to Tuggle, while Zant permits imposition of the death penalty in non-weighing states if an invalid aggravating factor is considered, "that holding does not support the quite different proposition that the existence of a valid aggravator always excuses a constitutional error in the admission or exclusion of evidence." Id. The gravamen of Tuggle, therefore, is that if after eliminating from consideration an invalid aggravating circumstance there remains "firm ground" on which the death penalty can be imposed, then imposition of the death penalty is proper.

The circumstances in this case are more like those in Zant than Tuggle because, even eliminating the rape aggravating factor, one must conclude that the death penalty rests on firm ground, namely, the armed robbery aggravating factor. First, we are not confronted with a situation, as in Tuggle, where the jury had before it inadmissible evidence. Therefore, no evidence before the jury became more or less persuasive as a result of inadmissible evidence. Second, Middleton, unlike Tuggle, was not precluded from adducing relevant mitigating evidence. Third, the evidence supports the jury's finding that the murder was committed during the commission of an armed robbery -- Middleton was armed with a knife as he stole her money -- and Middleton does not contest this. Fourth, the alleged error in no way contaminated the jury's consideration of evidence supporting the

12

armed robbery aggravating circumstance or the jury's conclusion as to its existence. Thus, the instructions on criminal sexual conduct had no "substantial and injurious effect" as defined in Brecht on the jury's ultimate determination to sentence Middleton to death on the basis of the armed robbery aggravating factor, which, under South Carolina law, is a valid aggravating factor, see S.C. Code Ann. § 16-3-20(c)(a)(1)(d). Like the Court in Zant, we are left with an unimpeachable aggravating circumstance; thus, the death penalty was properly imposed.

IV.

Next, Middleton contends that he was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments. According to Middleton, his trial counsel, Joseph Kent, Public Defender for Charleston County, who was experienced in defending capital murder cases, rendered ineffective assistance because Kent was an alleged alcoholic, and his alleged alcoholism rendered him unfit to mount an effective defense. In advancing this claim, Middleton offers seven specific instances of Kent's alleged constitutionally deficient performance: (1) Rather than conceding guilt as allegedly originally planned, Kent stated in his opening statement that the State would fail to prove that Middleton committed the murder; (2) Kent attacked Mack's husband on cross-examination, implying that the Macks' marriage was in shambles, Mr. Mack was unconcerned with his wife's safety, and Mack abused alcohol; (3) Middleton's insanity defense was presented shoddily because the experts Kent called to testify presented conflicting evidence; (4) Kent failed to capitalize on available evidence to challenge the only expert testimony questioning Middleton's mental retardation; (5) Kent mischaracterized Middleton as "dumb" in closing argument, thereby trivializing the extent of Middleton's mental incapabilities; (6) Kent did not request a jury instruction respecting the jury's responsibility in imposing sentence; (7) Kent's inadequate pretrial preparation resulted in his failure to orchestrate the compelling mitigating circumstances surrounding Middleton, thereby culminating in a piece-meal, fractured defense. At the hearing on Middleton's habeas petition, much of the testimony respecting this claim was Kent's own self-condemnation concerning his representation of Middleton.

13

The district court analyzed specifically each of these alleged errors and ultimately concluded that none fell outside the ambit of constitutionally adequate performance. On appeal, Middleton imputes error to the district court for analyzing independently each instance of alleged ineffective assistance and chastises the district court for failing to undertake a complete analysis of this claim. The gravamen of this argument is that the district court did not consider the cumulative effect of Kent's alleged defective performance, which, when viewed in whole, culminated in ineffective assistance of counsel.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court articulated a two-prong test that Middleton must satisfy in order to prevail on his ineffective-assistance-of-counsel claim. First, Middleton must establish that his counsel's performance "fell below an objective standard of reasonableness." Id. at 688. We commence our review with the premise that "a strong presumption [exists] that counsel's conduct falls within the wide range of reasonable professional assistance," id. at 689, and that counsel "made all significant decisions in the exercise of reasonable professional judgment," id. at 690. In analyzing reasonableness under the performance prong, the material inquiry is whether the performance was reasonable considering the totality of the circumstances at the time the performance was rendered. See id. Given this individualized inquiry into reasonableness, "specific guidelines are not appropriate," id. at 688, because a rigid regimen of guidelines "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions," id. at 689. Recognizing that post hoc rationalizations for a conviction must not be transmuted into putative ineffective-assistance claims by aggrieved defendants who are tempted "to second-guess counsel's assistance," Strickland admonished that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. We must, therefore, be vigilant in avoiding hindsight. Accordingly, we are loath to inject "[i]ntensive scrutiny of counsel and rigid requirements for acceptable assistance" into ineffective-assistance claims. Id. at 690.

Second, Middleton must demonstrate that he was prejudiced by his counsel's deficient performance to such a degree "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

14

According to Strickland, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. In analyzing the prejudice prong, we "presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." Id. Middleton, therefore, has an extremely heavy burden to bear if he is to succeed on his ineffective-assistance-of-counsel claim. As the Eleventh Circuit explained,"the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir.), cert. denied, 115 S. Ct. 255 (1994).

We find no merit to Middleton's ineffective-assistance-of-counsel claim. First, the district court conducted "an exhaustive review of the record and of the in-depth testimony given by Mr. Kent as to each alleged error" and concluded that Kent's performance was reasonable. Middleton II, 855 F. Supp. at 842 (emphasis added). At least implicit in this analysis is the fact that the cumulative effect of the evidence was considered, even if the term "cumulative effect" was not expressly employed by the district court. Second, the fact that the district court analyzed all of the alleged errors separately does not necessarily mean that it viewed them in a vacuum, but merely that it specifically addressed each alleged error. The district court's recognition of each alleged error necessarily entailed an evaluation for cumulative effect. Third, Middleton's reliance on Kyles v. Whitley, 115 S. Ct. 1555 (1995), as dictating reversal is misplaced. In Kyles, the Supreme Court reversed on the issue of evaluation of evidence for the cumulative effect because on numerous instances the Fifth Circuit specifically analyzed separately and dismissed separately each piece of evidence. See id. at 1569. Such is simply not the case here because we believe that the district court did consider the cumulative effect of the alleged errors. Finally, Kent's self-condemnation is not persuasive evidence of ineffective assistance of counsel because it is nothing but a post hoc rationalization intended to defeat imposition of the death penalty. See Atkins v. Singletary, 965 F.2d 952, 959-60 (11th Cir. 1992).

Nonetheless, our review of the entire record on appeal compels us to conclude that Kent's alleged errors, whether viewed singularly or cumulatively, did not fall outside the purview of the objective standard of reasonableness. Because we conclude that Middleton's state

15

trial counsel's actions were not objectively unreasonable, "we need not evaluate trial counsel's actions under the second prong of Strickland." Bell v. Evatt, No. 94-4016, 1995 WL 746811, at *6 (4th Cir. Dec. 18, 1995).**2**

V.

Next, Middleton complains that his Fifth and Fourteenth Amendment rights against compelled self-incrimination were violated because at the sentencing phase of his trial, the state trial court failed to instruct the jury sua sponte that it could draw no adverse inference from Middleton's failure to testify at the sentencing hearing. Brazenly, Middleton advances this contention despite the fact that the state trial court issued such an instruction at the guilt phase of his trial and despite the fact that Middleton failed to request the instruction at the sentencing phase.

Middleton unsuccessfully advanced this contention to the Supreme Court of South Carolina on direct appeal. See Middleton I, 368 S.E.2d at 461. While the Supreme Court of South Carolina opined that "this charge applies to the sentencing phase as well as the guilt phase of a capital trial, [i]t is not reversible error[if] no request is made absent other circumstances such as prejudice from the [prosecutor's] reference to the defendant's silence." Id. The court concluded that because the prosecutor made no negative inference from Middleton's silence and because defense counsel failed to request the instruction at the sentencing phase, the failure to give the instruction was "error harmless beyond a reasonable doubt." Id.

In Carter v. Kentucky, 450 U.S. 288, 303 (1981), the Supreme Court opined that a state trial "judge can, and must, if requested to do so, use the unique power of the [no-adverse-inference] instruction to reduce that speculation to a minimum." (emphasis added). The

_____

**2** Our review of the record reveals that many of the alleged "errors" were trial strategies. Middleton's basis for asserting that he was denied effective assistance of counsel was that he received a life sentence for the murder of Janell Garner, but the death penalty for the murder of Mack. This does not prove that Middleton had ineffective counsel, but merely that different juries mete out different punishment.

16

instruction, therefore, is mandatory, provided it is requested. To dispel any doubt that the instruction must be requested, the Court repeated "that a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." Id. at 305 (emphasis added). The Court has not retreated from the requirement that the instruction be requested. See, e.g., James v. Kentucky, 466 U.S. 341, 350 (1984) ("The Constitution obliges the trial judge to tell the jury . . . not to draw the inference if the defendant so requests[.]") (emphasis added). Failure to give the instruction is subject to harmless error analysis. See, e.g., Hunter v. Clark, 934 F.2d 856, 860-61 (7th Cir.) (en banc), cert. denied, 502 U.S. 945 (1991); Finney v. Rothgerber, 751 F.2d 858, 864 (6th Cir.), cert. denied, 471 U.S. 1020 (1985); Richardson v. Lucas, 741 F.2d 753, 756 (5th Cir. 1984).

We find no merit to Middleton's claim that his Fifth and Fourteenth Amendment rights against compelled self-incrimination were violated by failure to give the instruction at the sentencing phase of the trial. First, the instruction was given at the guilt phase of the trial to the same jury that sentenced Middleton. Second, Middleton's counsel failed to request the instruction at sentencing, and Middleton cannot impute error to the state trial court based on his own failure to request an instruction, particularly where, as here, the prosecution made no allusion that Middleton's failure to testify connoted guilt or gave rise to any other adverse inference. Middleton, therefore, has not satisfied the requirement of Carter and cannot now complain. Even if there were any error in failing to give the instruction, like many of our sister circuits, we conclude that such error was harmless. Here, there was overwhelming evidence of guilt, there was no suggestion that Middleton's failure to testify implied guilt or any other adverse inference, and the instruction was given at the guilt phase of his trial.

Despite the force of precedent, or perhaps because of it, Middleton argues that under in favorem vitae review, we must construe the record as though the instruction was requested and denied. This argument, however, misperceives federal habeas law and principles of federalism because in favorem vitae review is a state procedural doctrine by which a state appellate court reviews the entire record in a capital murder case for error, regardless of whether any error was preserved by proper objection. See Drayton v. Evatt , 430 S.E.2d 517, 519

17

(S.C.), cert. denied, 114 S. Ct. 607 (1993). In favorem vitae review, which South Carolina abolished subsequent to Middleton's conviction, see State v. Torrence, 406 S.E.2d 315, 324 (S.C. 1991), does not invoke any federal constitutional protections. Middleton's argument confuses procedural default with examination of the merits of a constitutional claim. We conclude, therefore, that absent any request for the instruction or prejudicial commentary, there is no merit to Middleton's contention that the state trial judge's failure to instruct the jury that no adverse inference may be drawn from Middleton's failure to testify at the sentencing phase violated his Fifth and Fourteenth Amendment rights.

VI.

Asserting that the state trial court erred in instructing the jury with respect to Middleton's sentence when it characterized -- forty-seven times by Middleton's count -- the jury's sentencing responsibility as a "recommendation," rather than as binding, Middleton contends that his sentence cannot stand. According to Middleton, this mischaracterization violates the Eighth and Fourteenth Amendments because it relieved the jury of its understanding that it would be responsible for imposing the death penalty.

In Caldwell v. Mississippi, 472 U.S. 320, 328-29 (1985), the Court concluded that a jury laboring under the impression that its sentence was only advisory, not binding, results in a violation of the Eighth and Fourteenth Amendments because the jury's sense of responsibility for imposing the death penalty is greatly diminished. Caldwell held, therefore, that a jury must be fully cognizant that it is responsible for determining punishment. In Dugger v. Adams, 489 U.S. 401, 407 (1989), however, the Court explained that "if the challenged instructions accurately described the role of the jury under state law, there is no basis for a Caldwell claim. To establish a Caldwell violation, a defendant necessarily must show that the remarks to the jury improperly described the role assigned to the jury by local law."

Applying the principles of Caldwell and Dugger, we resolved the issue presented here in Gaskins v. McKellar, 916 F.2d 941 (4th Cir. 1990), cert. denied, 500 U.S. 961 (1991). Gaskins, a habeas petitioner, contended that the sentencing instructions at his trial violated

18

the Eighth and Fourteenth Amendments because the state trial judge cast the sentencing instructions in terms of "recommendation," or some variation thereof, in over forty instances. See id. at 953. Based on the instructions, Gaskins maintained, as does Middleton, that the jury did not understand that it was responsible for determining punishment. See id. Rejecting Gaskins's challenge, we concluded that the instructions were constitutional. While observing that the instructions would have been preferable had they stated "binding recommendation," we eschewed Gaskins's contention that the instructions failed to pass constitutional muster because the instructions "`had no effect on the sentencing decision.'" Id. (quoting Caldwell, 472 U.S. at 341). We reached this conclusion because at voir dire, the jurors were informed that they could impose the death penalty or life imprisonment and that they had to make this decision. See id. There was no effect on the sentence because the jury understood that its decision was binding, not advisory.

The challenged jury instructions in this appeal provided in pertinent part:

> [I]t now becomes your duty to decide what sentence you will recommend that this court impose upon [Middleton].
>
> There are two verdicts you are to consider in this case. One, the death penalty . . . . The other is life imprisonment.
>
> The order in which I explain these two sentences is in no way a recommendation by this Court as to which sentence you should choose to recommend. It is simply that one must be stated first.
>
> By this recommendation of sentence form which I hold in my hand, you, the jury, may recommend that this Court sentence [Middleton] to death. . . .
>
> It is the law . . . that a recommendation for the imposition of the death penalty must be a unanimous recommendation, and that each and every juror sign his or her name to the recommendation form.

19

. . . .

> Now, for this [death penalty] recommendation to be
> made, that is, that [Middleton] be sentenced to death, you
> must first find that a statutory aggravating circumstance
> existed beyond a reasonable doubt.

(J.A. at 1500-01.) Additionally, the state trial court informed the jury at voir dire that "the ultimate punishment of[Middleton] will be in your hands if you as a member of the trial jury have found [him] guilty." (J.A. at 119.) (emphasis added). On direct appeal, the Supreme Court of South Carolina held that there was no constitutional violation because "[t]he trial judge . . . clearly explained to all prospective jurors" that they would be responsible for imposing the death penalty. Middleton I, 368 S.E.2d at 461. We find Gaskins dispositive and mandating affirmance on this issue. When viewed in context, the voir dire colloquy and the jury instructions as a whole impressed upon the jury that it had the sole responsibility for determining the sentence.

VII.

Relying on Cage v. Louisiana, 498 U.S. 39 (1990) (per curiam), overruled in part by Estelle v. McGuire, 502 U.S. 62 (1991), Middleton asserts that the jury instructions violated his Fifth and Fourteenth Amendment rights to due process of law because the instructions lowered the State's burden of proving that Middleton was guilty beyond a reasonable doubt of the crimes for which he was charged. The jury instructions provided in pertinent part:

> The term reasonable doubt is a common, legal term used
> for many, many years and yet it still is difficult to define.
> The word reasonable means moderate, fair, not extreme or
> excessive.
>
> Now, a reasonable doubt is not an imaginary doubt or a
> fanciful doubt or a weak doubt or a slight doubt. As I previously said, a reasonable doubt is a substantial doubt which
> arises out of the evidence or the lack of evidence in the case

20

> for which a person honestly seeking to find the truth can give a reason.
>
> Now, if you have such a doubt in your mind, you must resolve that doubt in favor of [Middleton] and write a verdict of not guilty.

(J.A. at 1282-83.) The gravamen of Middleton's assertion is that these instructions misdefined "reasonable doubt" as a "substantial doubt," thereby misleading the jurors into believing that doubt would not qualify as "reasonable" unless they could articulate a reason for the doubt.

We eschewed the argument that Middleton seeks to advance here in Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995). Like Middleton, habeas petitioner Kornahrens contended that the state trial court's characterizing reasonable doubt as "substantial doubt" in the jury instructions violated his due process rights. Relying on Victor v. Nebraska, 114 S. Ct. 1239 (1994), and Adams v. Aiken, 41 F.3d 175 (4th Cir. 1994), cert. denied, 115 S. Ct. 2281 (1995), we rejected Kornahrens's contention:

> Although the Supreme Court did hold in [Cage ] that the use of the term "substantial doubt" as a substitute for "reasonable doubt" violates due process, we have since recognized that in conducting a Cage analysis, courts must look to the entire context of the jury charge and not just the offending language, reversing only if there is a "reasonable likelihood" that the jury would have applied the instruction in an unconstitutional manner. Under this framework, we do not believe that the jury charge violated Kornahrens's constitutional rights. Although the trial judge used the term "substantial doubt," his charge was almost identical to the one we affirmed in Adams: it explained that a reasonable doubt is not an imaginary doubt, but is a lack of evidence or a doubt for which a person could give a reason. Here, like in Adams, the full instruction tempered any risk of confusion from the substantial doubt language.

Kornahrens, 66 F.3d at 1363 (citation omitted).

21

Middleton's contention that the jury instructions violated his due process rights cannot prevail. Under Victor, Adams, and Kornahrens, the instructions used in the present appeal are constitutionally sound. Here, the term "substantial doubt" was remedied by the phrase "a reasonable doubt is not an imaginary doubt or a fanciful doubt or a weak doubt or a slight doubt." The use of these terms precluded any reasonable likelihood that the jurors would misunderstand the concept of reasonable doubt. Any infirmity introduced into the instructions by the term "substantial doubt" was neutralized by the explanation that "substantial doubt" was not a fleeting, vague doubt, but a genuine doubt. Properly viewed in context, the instructions here dispelled any infirmity that the term "substantial doubt" may have injected into the trial. Likewise, there is no merit to Middleton's assertion that the phrase "doubt for which the jury can give a reason" is invalid; various courts have sustained such language. See, e.g. , Robinson v. Callahan, 694 F.2d 6, 7 (1st Cir. 1982) (like instruction held not to be constitutional error on collateral review); United States v. Cruz, 603 F.2d 673, 675 (7th Cir. 1979) (per curiam) (same on direct review), cert. denied, 444 U.S. 1071 (1980); United States v. Muckenstrum, 515 F.2d 568, 570 (5th Cir.) (same), cert. denied, 423 U.S. 1032 (1975). We hold that the jury instructions did not lower the State's burden of proving that Middleton was guilty beyond a reasonable doubt.

VIII.

Finally, Middleton asserts that the state trial court erred with respect to instructing the jury concerning consideration of mitigating circumstances in violation of Eddings v. Oklahoma, 455 U.S. 104 (1982), and Lockett v. Ohio, 438 U.S. 586 (1978) (plurality opinion). Specifically, he argues that because the state trial court instructed the jury that its verdict and finding of aggravating circumstances must be unanimous, the jury concluded that the finding of mitigating circumstances likewise must be unanimous.

Middleton's assertion is belied by the facts. In pertinent part, the jury instructions read:

> You may also consider any non-statutory mitigating circumstances. . . .

22

I tell you that while there must be some evidence which supports a finding by you that a statutory or non-statutory mitigating circumstance exists, you need not find the existence of such a circumstance beyond a reasonable doubt.

. . . While an aggravating circumstance must be found before you can even consider recommending the death penalty, once such finding is made beyond a reasonable doubt you may recommend the death sentence even though you find the existence of a statutory mitigating circumstance.

In other words, the existence of an alleged statutory mitigating circumstance is not a bar to the imposition of the death penalty.

. . . [You may sentence Middleton] to life imprisonment <u>for any reason or for no reason at all</u>. . . .

In other words, you may choose to recommend life imprisonment if you find a statutory or non-statutory mitigating circumstance, or you may choose to recommend life imprisonment as an act of mercy.

In any instance, should you choose to recommend life imprisonment your decision must be a unanimous one and the foreman alone would be required to sign the recommendation form.

(J.A. at 1506-07.) (emphasis added). The state trial court concluded by instructing the jury: "Whatever your recommendation is, it must be a unanimous one; that is to say, it must be the verdict of each and every juror." (J.A. at 1508.)

The state trial court did not state or imply that mitigating circumstances had to be unanimous; rather, the word "unanimous," or a variation thereof, was used to instruct the jury in connection with imposing the death penalty, finding <u>aggravating</u> -- not mitigating -- circumstances, or sentencing Middleton to life imprisonment. The charge, viewed as a whole, was not improper.

23

Likewise, Middleton's assertion has no legal basis. Kornahrens is dispositive of the argument Middleton seeks to advance here and compels us to reject it:

> Kornahrens contends that the trial court's jury instructions during the sentencing phase were so confusing that a "substantial probability" exists that "reasonable jurors . . . well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance." Mills v. Maryland, 486 U.S. 367, 384 (1988). We disagree. Unlike in Mills or its direct descendant, McKoy v. North Carolina , 494 U.S. 433 (1990), the state trial judge in Kornahrens's sentencing case never informed the jury that it had to find a mitigating factor unanimously. Instead, the judge stressed the importance of unanimity for aggravating factors and never for mitigating factors. Additionally, the judge emphasized that the jury could recommend a life sentence based on its finding of a mitigating factor or for no reason at all. Therefore, because we do not believe that the probability of jury confusion on the issue of unanimity was substantial, we reject this claim on its merits as well.

Kornahrens, 66 F.3d at 1364.

Middleton's argument with respect to this issue is eleventh-hour; it has no basis in fact. There is simply no reasonable likelihood, especially when the charge is considered as a whole, that the jury misapplied the instructions.

IX.

The order denying Middleton a writ of habeas corpus is affirmed.

AFFIRMED

24