THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TODD L. FRIEBERG, Defendant-Appellant.

Fourth District    No. 4—98—0132

Argued May 26, 1999.—Opinion filed June 25, 1999.

Daniel D. Yuhas and Duane E. Schuster (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Norbert J. Goetten, Robert J. Biderman, and James C. Majors (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1989, a jury convicted defendant, Todd L. Frieberg, of controlled substance trafficking (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1) and possession of a controlled substance (more than 900 grams of a substance containing cocaine) (Ill. Rev. Stat. 1987, ch. 56½, par. 1402). The trial court later sentenced him to 30 years in prison on the trafficking conviction and 15 years in prison on the possession conviction, to be served concurrently.

In October 1990, this court affirmed defendant's convictions and sentences (see *People v. Frieberg*, 202 Ill. App. 3d 1115, 593 N.E.2d 1178 (1990)). The supreme court granted defendant's petition for leave to appeal, and in March 1992, that court also affirmed defendant's convictions and sentences (see *People v. Frieberg*, 147 Ill. 2d 326, 589 N.E.2d 508 (1992)). In November 1992, defendant filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.* (now 725 ILCS 5/122—1 *et seq.* (West 1992))). In December 1992, the trial court appointed postconviction counsel to represent defendant and granted leave to amend defendant's petition.

In April 1997, defendant's postconviction counsel filed an amended petition, alleging numerous constitutional violations, including that (1) defendant was denied a fair trial because a juror received an "unauthorized communication" during trial; and (2) defendant's trial counsel, J. Steven Beckett, provided ineffective assistance of counsel. During February 1998, the trial court granted part of the State's motion to dismiss the amended petition and dismissed some claims without conducting an evidentiary hearing. However, the court conducted an evidentiary hearing on defendant's claim of ineffective assistance of counsel and subsequently denied that portion of defendant's amended postconviction petition.

Defendant appeals, arguing that the trial court erred by (1) dismissing without an evidentiary hearing defendant's claim that he was denied a fair trial when one juror received an "unauthorized communication" during trial, and (2) denying the remainder of his amended postconviction petition following an evidentiary hearing. Defendant contends that the record shows he received ineffective assistance of trial counsel when Beckett (a) failed to advise defendant of the potential consequences of rejecting the State's plea offer, (b) usurped defendant's right to choose whether to accept the plea offer,

and (c) usurped defendant's constitutional right to choose whether to testify at trial. We affirm.

## I. BACKGROUND

Defendant's amended postconviction petition alleged the following: (1) he was denied a fair trial when one juror received an "unauthorized communication" during trial; (2) he was denied a fair trial when jurors read and discussed news accounts of his trial; (3) his 30-year prison sentence and $50,000 fine constituted an "illegal jury tariff" because the trial court imposed that sentence on defendant due to "his continued assertion of his right to a jury trial even after the State offered [him] a plea to a Class 4 [f]elony with probation and fine"; (4) the controlled substance trafficking statute (Ill. Rev. Stat. 1987, ch. 56½, par. 1401.1) was vague and confused the jury; (5) Beckett provided ineffective assistance of counsel during trial by (a) failing to file a motion *in limine* requesting that the court bar the prosecution from commenting on defendant's assertion of his right to counsel during police interrogation, (b) "opening the door to comment on this suppressed evidence by an ineptly phrased, vague[,] and open[-]ended question" to a witness, (c) "by delving into the contents of the suppressed statement" at trial, (d) failing to inform defendant that he did not have to testify on his own behalf at trial, and (e) failing to challenge a search warrant; (6) the cumulative effect of Beckett's trial errors denied defendant effective assistance of counsel and a fair trial; and (7) defendant was denied effective assistance of appellate counsel because Beckett "labored under a *per se* conflict" because he could not claim his own ineffectiveness. In February 1998, the court dismissed defendant's first four claims without conducting an evidentiary hearing. However, the court conducted an evidentiary hearing on defendant's claims of ineffective assistance of counsel. We discuss the evidence presented at the hearing only to the extent necessary to put defendant's arguments in context.

Lewis Frieberg, defendant's father, testified on defendant's behalf that he hired Beckett and another attorney to represent defendant. Although Lewis testified that Beckett never advised defendant that he had a constitutional right not to testify on his own behalf, Lewis acknowledged that he was not present during every conversation between defendant and Beckett.

Lewis also testified in an offer of proof that around the second or third day of defendant's trial, Beckett told defendant and defendant's parents that the State had offered a "Class 4 [felony] plea." Beckett also told them that the only reason the assistant State's Attorney

had made the plea offer was because he knew defendant was winning the case. Lewis then stated the following:

> "[Beckett] said he wasn't here to plea[d] his cases, that we, you know, should go on with the trial and then he gave us a few minutes. My wife said, [']can we think about it for awhile,['] and he said, [']no, we have to know right now.[']"

Lewis also stated that defendant, Lewis, and defendant's mother "just answered [Beckett] right there. We just said okay."

On cross-examination during the offer of proof, Lewis testified that after Beckett informed defendant and defendant's parents of the State's plea offer, Beckett told them they needed to make a decision.

Carolyn Frieberg, defendant's mother, testified on defendant's behalf that she was present during meetings between defendant and Beckett, and Beckett was the "decision maker." Carolyn stated that Beckett did not advise defendant of his constitutional right not to testify on his own behalf.

Carolyn also testified in an offer of proof that around the third day of defendant's trial, Beckett told defendant and his parents that the State had offered a plea bargain. Carolyn stated that when she, defendant, and Lewis asked if they could wait and think about it, Beckett told them that he does not usually plea bargain his cases. Carolyn also stated that "we just solely left [the decision] up to [Beckett] because we don't know anything about the law."

On cross-examination during the offer of proof, Carolyn testified, in pertinent part, as follows:

> "Q. [Assistant State's Attorney:] [Beckett] made a recommendation of what his position was; would that be correct?
>
> A. [Carolyn:] Yes, I guess.
>
> Q. And you ultimately made a decision?
>
> A. I guess, yes."

On redirect examination, Carolyn testified that they followed Beckett's recommendation regarding whether defendant should accept the State's plea offer.

Defendant testified on his own behalf that, until the third day of his trial, Beckett had never discussed whether defendant would testify. Defendant stated Beckett never advised defendant regarding his constitutional right to choose whether to testify at trial. Beckett never asked defendant whether he wanted to testify, and Beckett ultimately decided that defendant would testify. Defendant also stated that had he known of his constitutional right not to testify, he "certainly would have given it some thought," but he did not know whether he would have chosen to testify.

On cross-examination, defendant testified that prior to the start of

his trial, Beckett "probably" discussed whether defendant was going to testify at trial. Defendant acknowledged being present during the trial court's pretrial admonishments to the jury; however, he denied hearing the court inform the jury that defendant did not have to testify on his own behalf.

Defendant also testified in an offer of proof that on the third day of his trial, Beckett told defendant "it was his duty to inform [defendant] that a plea offer had been made by the State." Beckett also told defendant that the only reason the assistant State's Attorney had made the plea offer was because he knew defendant was winning the case. Defendant asked Beckett what the penalties were for a "Class 4 [felony] plea bargain," and Beckett told him that the penalties ranged from probation to three years in prison. Defendant then asked Beckett if defendant could have time to think about the decision, and Beckett told him that he had to decide within 15 minutes. Defendant testified that he followed Beckett's "directions" to proceed with the trial.

Beckett testified on the State's behalf that defendant's parents contacted him sometime in early 1989 and asked him to represent defendant in this case. Prior to trial, Beckett met with defendant between 5 and 10 times to discuss defendant's case, including whether defendant would testify on his own behalf. In that regard, Beckett testified, in pertinent part, as follows:

"Q. [Assistant State's Attorney:] So prior to trial, there were actual discussions with [defendant] about the fact of whether or not he would be testifying?

A. [Beckett:] Yeah. Yeah, I don't know if it is fair to describe it as a discussion. This wasn't a civics lesson on whether or not you had the right to testify; it was a shared strategy that I felt [defendant] had to testify and I told him why.

Q. *Did you ever discuss with him the fact that he didn't have to testify?*

A. *Sure.* Of course, what I pointed out to him was because he had this false exculpatory statement and it is the first statement to, I think, [Officer Mark] Bagnell that, in essence, says [']I don't know anything about any cocaine,['] and if [defendant] doesn't testify, then the jury is left with the impression that he lied, that he told the police that he didn't know anything about the cocaine when all the other witnesses are going to testify about seeing this brick of cocaine in his apartment and seeing [defendant] in the same room, which didn't make any sense. It is not a theory that will ever fly, and I explained that to [defendant], that this is just a case, [defendant], where you have to testify and he agreed and we set about to work on his testimony and then corroborating his testimony with other witnesses, which I thought we did effectively.

Q. *So to be clear, you indicated to [defendant] that he didn't have to testify, but you explained to him the reasons why he needed to testify?*

A. *That's correct.*

Q. So you explained what would happen if he didn't testify?

A. That's correct. I explained to him that in my opinion he didn't have a chance if he didn't testify and the reason why he didn't have a chance, because the jury would only hear the lie that was told and not hear that he told the truth to the police, which was the second statement, which was the other complex thing about the case.

Q. *And after you explained all that to [defendant], he agreed with you and indicated he was going to testify?*

A. *Yes."* (Emphasis added.)

Beckett also testified that sometime during defendant's trial, the assistant State's Attorney offered defendant the opportunity to plead guilty to a Class 4 felony. Beckett discussed the plea offer with defendant and his parents because he "felt that it was a serious matter." He told defendant that "what should happen in this case depended largely on how [defendant] felt he was going to do as a witness, whether he felt good about testifying." Defendant told Beckett that he felt well prepared and "felt he would go a good job." Beckett stated that defendant himself ultimately decided not to accept the State's plea offer.

After considering the evidence presented and counsel's arguments, the trial court denied the ineffective assistance of counsel claims set forth in defendant's amended postconviction petition.

This appeal followed.

## II. ANALYSIS

### A. Proceedings Under the Act

"The general rules regarding post[ ]conviction proceedings are familiar. The [Act] provides a remedy for defendants who have suffered a substantial violation of their constitutional rights at trial. [Citation.] A post[ ]conviction proceeding is not an appeal of the underlying conviction; rather, it is a collateral attack on the trial court proceedings in which a defendant attempts to establish constitutional violations that have not been and could not have been previously adjudicated. [Citation.] The defendant bears the burden of establishing that a substantial violation of his constitutional rights occurred." *People v. Henderson*, 171 Ill. 2d 124, 131, 662 N.E.2d 1287, 1292 (1996).

■ The Act provides a three-stage process for adjudication of petitions for postconviction relief. At the first stage, the trial court should

not decide the petition on the merits; instead, without input from the State or further pleadings from the defendant, the court should simply determine under section 122—2.1 of the Act if the petition is frivolous or patently without merit. 725 ILCS 5/122—2.1 (West 1992). If the trial court determines at this first stage that the petition is not frivolous or patently without merit, then at the second stage, the court may appoint counsel to represent an indigent defendant, and counsel will have an opportunity to amend the petition. The State may also, at this second stage, file a motion to dismiss the petition. If the State does not file a motion to dismiss or if the trial court denies the State's motion, the court then may conduct an evidentiary hearing on the merits of the petition at the third and final stage.

■ To warrant an evidentiary hearing, the defendant's petition must make a substantial showing of a constitutional violation. *People v. Hernandez*, 298 Ill. App. 3d 36, 39, 697 N.E.2d 1213, 1215 (1998); see also *Henderson*, 171 Ill. 2d at 140, 662 N.E.2d at 1296 ("[D]efendant is not entitled to an evidentiary hearing on his post[ ]conviction petition as a matter of right. [Citation.] Instead, the factual allegations contained in the petition, supported where necessary by the trial record and affidavits, must first show that a substantial constitutional violation occurred"). Because the trial court's decision to deny an evidentiary hearing is essentially a legal one, a reviewing court does not defer to the trial court's decision, but instead reviews the matter *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 388-89, 701 N.E.2d 1063, 1075 (1998). However, if the trial court conducts an evidentiary hearing on the defendant's postconviction petition, a reviewing court will not reverse the trial court's decision unless it was manifestly erroneous. *People v. Griffin*, 109 Ill. 2d 293, 303, 487 N.E.2d 599, 603 (1985). A decision is manifestly erroneous only if it contains error that is "clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997).

### B. Anonymous Note Found in Juror's Notepad

Defendant first argues that the trial court erred by dismissing without an evidentiary hearing defendant's claim that he was denied a fair trial because a juror received an "unauthorized communication" during trial. We disagree.

In his amended postconviction petition, defendant alleged that juror misconduct occurred when one juror found a piece of paper with the word "guilty" handwritten on it in her juror notepad during defendant's trial and failed to inform the trial court or counsel. In support of the claim, defendant attached the following affidavit from juror Becky Ehrlich:

"I served as the jury foreman in [defendant's] trial in 1989. This affidavit will briefly relate something that happened to me one day during the trial.

Each juror was given a note[ ]pad for taking notes during the trial. One day before the trial proceedings when I received my note[ ]pad, I noticed a piece of paper sticking out of the side of the note[ ]pad. I had never noticed it before. I pulled out the piece of paper and unfolded it, and it had one word written in another person's handwriting; the word 'guilty.' I did not write that word[ ] and was very surprised and disturbed to see this.

The note was written on the same kind of paper as my note[ ]pad. After I saw the note, I essentially forgot about it until recently. I never mentioned this to anyone else during the trial. No other jurors mentioned receiving any similar notes to me, and I never saw any such notes in note[ ]pads of other jurors. I do not believe this incident affected the verdicts I later gave in the case. This concludes my statement."

In *People v. Harris*, 123 Ill. 2d 113, 132-33, 526 N.E.2d 335, 342 (1988), the supreme court set forth the law concerning extra-record communication with jurors:

"It is well settled in Illinois that any communication with a juror during trial about a matter pending before the jury is deemed presumptively prejudicial to a defendant's right to a fair trial. Although this presumption of prejudice is not conclusive, the burden rests upon the State to establish that such contact with the jurors was harmless to the defendant. [Citations.] *A verdict will not be set aside where it is obvious that no prejudice resulted from a communication to the jury*, either by the court or by third persons outside the presence of the defendant." (Emphasis added.)

■ Reviewing the allegations set forth in defendant's amended postconviction petition and Ehrlich's affidavit in support thereof, we conclude that the allegations were not sufficient to make a substantial showing of a constitutional violation and to require an evidentiary hearing. See *Henderson*, 171 Ill. 2d at 140, 662 N.E.2d at 1296. This record shows that Ehrlich's seeing the "guilty" note simply did not prejudice defendant such that he was denied his right to a fair trial. Thus, we hold that the trial court did not err by dismissing without an evidentiary hearing defendant's claim that he was denied a fair trial when Ehrlich received an "unauthorized communication" during trial.

In so holding, we reject defendant's contention that *People v. Jones*, 105 Ill. 2d 342, 475 N.E.2d 832 (1985), is analogous to the present case. In *Jones*, after the conclusion of the defendant's case but before rebuttal, a juror brought to the jury room two copies of a racial "joke," which contained denigrating racist comments insulting to

black people. The defendant in *Jones* was black, and the jury was all white. The trial court excused the juror who brought the racist material, but found no prejudice even though three of the other jurors on the panel had seen the material. On appeal, the supreme court reversed, stating, "[T]here are circumstances which create 'such a probability that prejudice will result that [the trial] is deemed inherently lacking in due process.' [Citation.] Such circumstances are present here." *Jones*, 105 Ill. 2d at 352, 475 N.E.2d at 836.

This case, however, does not present the same situation as in *Jones*. Here, Ehrlich did not inform any other juror of the "guilty" note, did not see any other jurors receive such a note, and stated that seeing the note did not affect the verdicts she rendered at defendant's trial. These circumstances do not "create 'such a probability that prejudice will result that [the trial] is deemed inherently lacking in due process.' " *Jones*, 105 Ill. 2d at 352, 475 N.E.2d at 836. See *People v. Mitchell*, 152 Ill. 2d 274, 342, 604 N.E.2d 877, 910 (1992) (situation unlike *Jones* where (1) juror was not sure if the defendant's mother's comment was directed at her; (2) juror did not tell other jurors of possible comment until jurors had decided on death sentence; and (3) juror stated that the comment did not affect her voting to sentence defendant to death).

### C. Defendant's Claims of Ineffective Assistance of Counsel

■ Ineffective assistance of counsel claims are judged under the now familiar standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). To establish ineffective assistance of counsel, a defendant must first demonstrate that his defense counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the [s]ixth [a]mendment." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. In so doing, a defendant must overcome the strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. Second, a defendant must demonstrate a reasonable probability that, but for defense counsel's deficient performance, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. Both prongs of the *Strickland* test must be satisfied before a defendant can prevail on a claim of ineffective assistance of counsel. "Courts, however, may resolve ineffectiveness claims under the two-part *Strickland* test by reaching only the prejudice component, for lack of prejudice renders irrelevant the issue of

counsel's performance." *Coleman*, 183 Ill. 2d at 397-98, 701 N.E.2d at 1079.

## 1. *The Plea Offer*

■ Defendant next argues that the trial court erred by denying his amended postconviction petition because he received ineffective assistance of trial counsel when Beckett (1) failed to advise defendant of the potential consequences of rejecting the State's plea offer, including that defendant faced a minimum of 30 years in prison if convicted of controlled substances trafficking, and (2) usurped defendant's right to choose whether to accept the plea offer. We conclude that defendant has forfeited this issue.

Defendant failed to raise and argue this issue in either his original or amended postconviction petition. Pursuant to section 122—3 of the Act, any claim of substantial denial of constitutional rights not raised in the original or amended petition is forfeited. 725 ILCS 5/122—3 (West 1996); see *People v. Brisbon*, 164 Ill. 2d 236, 258, 647 N.E.2d 935, 945 (1995).

In addition, we reject defendant's contention that the trial court erred by excluding defendant's proffered testimony regarding Beckett's discussions with defendant concerning the State's plea offer. We have reviewed the transcript of the evidentiary hearing, and it appears that the trial court excluded that testimony because the court properly determined that it was irrelevant to the remaining claims of ineffective assistance of counsel in defendant's amended petition.

■ Moreover, assuming that defendant had not forfeited this issue, we nonetheless conclude that on the evidence presented—even including the testimony regarding the State's plea offer, which was presented during defendant's offers of proof—the trial court's denial of the amended postconviction petition was not manifestly erroneous. Defendant presented no evidence that he had suffered any prejudice from Beckett's alleged deficient performance during discussions with defendant concerning the plea offer. Neither defendant, his parents, nor Beckett testified that defendant would have accepted the State's offer to allow a guilty plea to a Class 4 felony even if defendant had known the minimum and maximum penalties for the three offenses with which he was charged. See *People v. Curry*, 178 Ill. 2d 509, 531, 687 N.E.2d 877, 888 (1997) ("[T]o establish prejudice, defendant must demonstrate that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer"); see also *People v. Jones*, 174 Ill. App. 3d 794, 799, 529 N.E.2d 66, 70 (1988) (no actual prejudice established where the defendant never testified he would have accepted State's offer to recommend 30 years' imprison-

ment even if he had known of possibility of an extended term). We also note that, based upon the evidence presented, the trial court reasonably could have found that it was defendant himself—not Beckett—who ultimately made the decision not to accept the State's plea offer.

## 2. Defendant's Decision To Testify at Trial

Last, defendant argues that the trial court erred by denying his amended postconviction petition because he received ineffective assistance of trial counsel when Beckett allegedly usurped defendant's constitutional right to choose whether to testify in his own behalf at trial. We disagree.

■ A defendant's right to testify at trial is a fundamental constitutional right, as is his right to choose not to testify. *People v. Madej*, 177 Ill. 2d 116, 145-46, 685 N.E.2d 908, 923 (1997); see *Rock v. Arkansas*, 483 U.S. 44, 51, 97 L. Ed. 2d 37, 46, 107 S. Ct. 2704, 2708 (1987) ("The right to testify on one's own behalf at a criminal trial has sources in several provisions of the Constitution"). The decision whether to testify ultimately rests with the defendant (*Madej*, 177 Ill. 2d at 146, 685 N.E.2d at 923); however, the defendant should make that decision with the advice of trial counsel (*People v. Smith*, 176 Ill. 2d 217, 235, 680 N.E.2d 291, 303 (1997)).

The evidence regarding defendant's claim that Beckett usurped defendant's right to choose whether to testify was conflicting, and the trial court resolved the conflict against defendant. In so concluding, the court stated, in relevant part, as follows:

"[Beckett] indicated in his testimony that he advised [defendant] that he did not have to testify. I don't know that he used the word[s] that he had a right not to testify. I believe the [d]efendant understood that. The [d]efendant in this case is unlike many of the defendants that I have had an occasion to participate or preside over in criminal trials. This is a defendant who is very intelligent, who did very well academically at the university, and in fact graduated, if I recall correctly, about two weeks prior to the sentencing hearing with a degree ***.

Admittedly, [defendant] is not knowledgeable in the criminal trial strategy, but unlike a vast majority of criminal defendants, because of [defendant's] intellect, because of his ability to communicate, he was clearly more able to understand and appreciate the advice of counsel and to participate in the development of the strategy for the trial.

I believe on the basis of the testimony that the [c]ourt has heard *** that it is clear that the [d]efendant, the [p]etitioner in this cause, has failed to show that Mr. Beckett [was] ineffective in

providing [defendant] appropriate assistance during the trial of this case."

Reviewing the record before us in accordance with the appropriate standard of review, we conclude that the trial court's finding that defendant's decision to testify was ultimately defendant's own choice was not manifestly erroneous. Thus, we hold that the court did not err by denying defendant's amended postconviction petition.

In so holding, we note that because the decision whether to testify at trial lies ultimately with a defendant, issues involving how that decision was made lurk—like an unexploded bomb—in every case resulting in a conviction. As the supreme court noted in *People v. Brown*, 54 Ill. 2d 21, 24, 294 N.E.2d 285, 287 (1973), "in every case in which the issue is raised, the lawyer's advice will in retrospect appear to the defendant to have been bad advice." Thus, convicted defendants who testified on their own behalf at trial often will later claim that doing so was not their personal choice and their trial counsel forced them to testify. On the other hand, defendants who did not testify at trial often will later claim that they really wanted to testify but their trial counsel prevented them from doing so.

To defuse this explosive situation, we urge trial courts *in every criminal case* to take the few seconds needed, after the State has rested its case in chief and before the presentation of the defense case, to admonish the defendant personally that he alone possesses the right to choose whether to testify on his own behalf, and that he should make that decision after consulting with counsel. Trial courts should emphasize to the defendant that whatever trial counsel's advice on this point may be, counsel cannot force the defendant to testify, nor can counsel prevent the defendant from testifying. For good measure, the court should once again inquire of the defendant before he testifies (or the defense rests without his testimony) to ensure that his decision about this matter was his alone and not coerced.

Taking a few seconds to so admonish the defendant would insulate the record from postconviction attacks like those in the present case. Here, it is fortunate that Beckett understood that a defendant's decision whether to testify lies ultimately with the defendant. However, the concept is a relatively new one, and not all criminal defense attorneys may be as familiar with it as Beckett.

One can easily imagine a postconviction petition in which the convicted defendant alleges that his trial counsel usurped the defendant's right to choose whether to testify and, at the hearing on the petition, trial counsel concedes that the defendant's allegation is true. Under these circumstances, the underlying conviction is in serious jeopardy. However, trial courts can make this scenario virtually impossible by admonishing defendants as we now urge.

We acknowledge that in *Smith*, 176 Ill. 2d at 235, 680 N.E.2d at 303, the supreme court held that "the trial court is not required to advise a defendant of his right to testify, to inquire whether he knowingly and intelligently waived that right, or to set of record defendant's decision on this matter." However, in a footnote to *Smith*, which involved a direct appeal, the court stated that it was not implying "that a defendant is no longer free to bring a post[ ]conviction challenge based on a denial of the right to testify." *Smith*, 176 Ill. 2d at 236 n.1, 680 N.E.2d at 303 n.1. Thus, although the supreme court in *Smith* held that the trial court did not err by failing to admonish the defendant about his right to testify, it simultaneously acknowledged that the very conviction it was upholding was subject to collateral attack. Nothing in *Smith* suggests that a trial court would err if, in the exercise of its sound discretion, it chose to admonish criminal defendants in the manner we now urge.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

KNECHT, P.J., and McCULLOUGH, J., concur.