THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DIONNA BEACHEM, Defendant-Appellant.

First District (3rd Division) No. 1—99—0852

Opinion filed December 24, 2002.

Michael J. Pelletier and Michael H. Orenstein, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Christine Cook, Alan J. Spellberg, William D. Carroll, and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

In *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), the United States Supreme Court issued a decision that penetrates the constitutional foundation of this state's extended-sentencing procedures. In this appeal from a summary dismissal of

her postconviction petition, Dionna Beachem (Beachem) challenges the constitutionality of the extended sentence of 90 years she received for first degree murder. The threshold question before us is whether *Apprendi* reaches beyond a direct appeal to an appeal of the dismissal of a timely filed postconviction petition. We hold that it does. We also hold the defendant was properly sentenced.[1]

FACTS

On December 5, 1994, Annie Jones (Jones), a 77-year-old woman living alone on Chicago's south side, was fatally beaten in her apartment. That day, Beachem was arrested and subsequently released on bond for attempting to use Jones's newly issued credit card at a suburban mall jewelry store. Two days later, Jones's landlord discovered her body.

Beachem was charged with and convicted of residential burglary, home invasion, robbery, and first degree murder. Though the trial court found her eligible for the death penalty, Beachem was sentenced to an extended term of 90 years' imprisonment for the murder conviction, 30 years for the home invasion conviction, 15 years for the residential burglary conviction, and 6 years for the robbery conviction, all sentences running concurrently.

Beachem appealed her convictions and sentences. We affirmed. *People v. Beachem*, No. 1—96—3260 (1998) (unpublished order under Supreme Court Rule 23).

Beachem then filed a *pro se* postconviction petition. In a 23-page "MEMORANDUM OPINION AND ORDER," the trial court dismissed Beachem's petition. This appeal followed.

DECISION

Beachem raises two issues in her initial brief.

First, Beachem contends the trial court erred in summarily dismissing the allegation in her postconviction petition that her trial attorney failed to advise her of a plea-bargain offer. Beachem's petition said: "After my sentencing, 8-26-96 my attorney told my aunt *** and my mother *** that the [S]tate offered me 20 years and I turned it down. This offer was never brought to my attention. If the [S]tate told me that they were offering me 20 years, it was my attorney's job to discuss that issue with me."

---

[1]The Illinois Supreme Court denied the State's petition for leave to appeal in this case, but directed us to vacate and reconsider the judgment we entered on December 6, 2000. We have done so.

The trial judge found Beachem failed to provide the gist of a constitutional claim, which is all that is required at the first stage of a postconviction proceeding. See *People v. Frieberg*, 305 Ill. App. 3d 840, 847, 713 N.E.2d 210 (1999). The petition should be dismissed if it is frivolous and patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418, 675 N.E.2d 102 (1996):

Here, Beachem's petition alleged her attorney should have discussed with her any offer made by the prosecution. Assuming Beachem is contending her attorney failed to advise her, this allegation lacks any record support. Beachem relies on a sworn February 5, 1999, handwritten statement from her mother. But this statement was addressed "To the Appellate Court" nearly a month after the trial court dismissed Beachem's petition. The trial judge did not have it.

■ In exercising our *de novo* review (*People v. Mitchell*, 189 Ill. 2d 312, 322, 727 N.E.2d 254 (2000)), we agree with the trial court: Beachem's plea-bargain offer allegation was "frivolous or *** patently without merit." 725 ILCS 5/122—2.1 (West 1996). It was pure unsupported conclusion.

■ Second, Beachem contends the trial court erred in summarily dismissing her allegations of prosecutorial misconduct. Because Beachem's petition contained no such allegations, this claim is waived. 725 ILCS 5/122—3 (West 1996).

In a supplemental brief, Beachem raises another, more substantial issue never addressed in the trial court. Beachem contends her extended-term sentence was unconstitutional.

In Beachem's first appeal, we held the trial court did not abuse its discretion in imposing a 90-year extended-term sentence. The court found two statutory aggravating factors, "that the crime was exceptionally brutal and heinous, indicative of wanton cruelty, and based on the fact that the victim was over 60 years of age." These findings triggered the extended-term sentence provision of the Unified Code of Corrections. See 730 ILCS 5/5—8—2(a)(1) (West 1996).

After Beachem's direct appeal, and after the denial of her postconviction petition, the United States Supreme Court decided *Apprendi*.

Justice Stevens' opinion for a 5-4 majority of the Court framed the issue:

> "The question presented is whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense *** be made by a jury on the basis of proof beyond a reasonable doubt." *Apprendi*, 530 U.S. at 469, 147 L. Ed. 2d at 442, 120 S. Ct. at 2351.

The Court then said:

"Our answer to that question was foreshadowed by our opinion in *Jones v. United States*, 526 U.S. 227[, 143 L. Ed. 2d 311, 119 S. Ct. 1215] (1999), construing a federal statute. We there noted that 'under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' [Citation.] The Fourteenth Amendment commands the same answer in this case involving a state statute." *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446, 120 S. Ct. at 2355.

Noting the constitutional founders would have recognized no distinction between an element of a felony offense and a so-called "sentencing factor," the Court offered an historical overview of the principle that a criminal defendant is entitled to a jury determination of guilt beyond a reasonable doubt on every element of the charged offense. The Court assured, however, "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (Emphasis in original.) *Apprendi*, 530 U.S. at 481, 147 L. Ed. 2d at 449, 120 S. Ct. at 2358.

The Court did not provide legislatures any leeway. The fact that the New Jersey legislature intended racial hatred to be an enhanced sentencing provision, not part of the crime of possessing weapons, was of no significance:

" '[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt.' " *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2363, quoting *Jones*, 526 U.S. at 252-53, 143 L. Ed. 2d at 332, 119 S. Ct. at 1228-29 (Stevens, J., concurring).

The Court said it again: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 147 L. Ed. 2d at 455, 120 S. Ct. at 2362-63.

Before proceeding to the merits of Beachem's *Apprendi* claim, we must answer a threshold question: does *Apprendi* apply to cases on collateral review? We limit our consideration of this question to timely,

first postconviction petitions. We make no comment on untimely or successive postconviction petitions.[2]

To determine whether *Apprendi* reaches back to a timely postconviction petition, we have to weigh the public's interest in the finality of criminal judgments against its interest in the fairness and integrity of criminal trials. This balance usually tips toward nonretroactivity. See *People v. Moore*, 177 Ill. 2d 421, 430, 686 N.E.2d 587 (1997) ("Generally, decisions which announce 'new rules' are not to be applied retroactively to cases pending on collateral review").

■ But a plurality decision by the United States Supreme Court in *Teague v. Lane*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), adopted by the Illinois Supreme Court in *People v. Flowers*, 138 Ill. 2d 218, 237, 561 N.E.2d 674 (1990), established two exceptions to this general principle.

First, "a new rule should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.' " *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075, quoting *Mackey v. United States*, 401 U.S. 667, 692, 28 L. Ed. 2d 404, 420, 91 S. Ct. 1160, 1180 (1971). Because *Apprendi* did not address primary, private behavior, this first exception does not apply.

Second, "a new rule should be applied retroactively if it requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty." ' " *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1076, quoting *Mackey*, 401 U.S. at 693, 28 L. Ed. 2d at 421, 91 S. Ct. at 1180, quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 82 L. Ed. 288, 292, 58 S. Ct. 149, 152 (1937).

How broad would this second exception be? The Court:

> "[W]e believe *** concerns about the difficulty in identifying both the existence and the value of accuracy-enhancing procedural rules can be addressed by limiting the scope of the second exception to those new procedures without which the likelihood of an accurate conviction is seriously diminished.
>
> Because we operate from the premise that such procedures would

---

[2]Several federal circuit courts have addressed the related question whether *Apprendi* applies to a second collateral review petition under 28 U.S.C.A. § 2255 (West 1994 & Supp. 2000). These courts have replied with a uniform no. See, *e.g.*, *In re Clemmons*, 259 F.3d 489 (6th Cir. 2001); *Browning v. United States*, 241 F.3d 1262 (10th Cir. 2001); *Rodgers v. United States*, 229 F.3d 704 (8th Cir. 2000); *Talbott v. Indiana*, 226 F.3d 866 (7th Cir. 2000); *In re Joshua*, 224 F.3d 1281 (11th Cir. 2000); *Hernandez v. United States*, 226 F.3d 839 (7th Cir. 2000); *Sustache-Rivera v. United States*, 221 F.3d 8 (1st Cir. 2000).

be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." *Teague*, 489 U.S. at 313, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077.

In a subsequent case the Court explained:

"It is *** not enough under *Teague* to say that a new rule is aimed at improving the accuracy of trial. More is required. A rule that qualifies under this [second] exception must not only improve accuracy, but also ' "alter our understanding of the *bedrock procedural elements*" ' essential to the fairness of a proceeding." (Emphasis in original.) *Sawyer v. Smith*, 497 U.S. 227, 242, 111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831 (1990), quoting *Teague*, 489 U.S. at 311, 103 L. Ed. 2d at 357, 109 S. Ct. at 1076, quoting *Mackey*, 401 U.S. at 693, 28 L. Ed. 2d at 421, 91 S. Ct. at 1180.

Much depends on how we describe the holding in *Apprendi*. If we were to say *Apprendi* reaches only a portion of a noncapital sentence, not its underlying conviction, it would be difficult, but not impossible, to make a case for the existence of procedures that are implicit in the concept of ordered liberty, per *Teague* and *Flowers*.[3] But analysis by label or category—sentence or conviction—is not a principled methodology. The question is how far a certain procedure reaches into the constitutional fabric of a fundamentally fair trial and conviction. Does it reach "bedrock"?

The rights affirmed in *Apprendi* are at the core of our criminal justice system. Justice Stevens' majority opinion:

"At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without 'due process of law,' Amdt. 14, and the guarantee that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury,' Amdt. 6. Taken together, these rights indisputably entitle a criminal defendant to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.' [Citations.]" *Apprendi*, 530 U.S. at 476-77, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355-56.

---

[3]Because "a criminal judgment necessarily includes the sentence imposed upon the defendant" (*Teague*, 489 U.S. at 314 n.2, 103 L. Ed. 2d at 358 n.2, 109 S. Ct. at 1077 n.2), *Teague*'s accuracy concerns may be implicated by sentencing procedures, as well as by trial procedures. See *Graham v. Collins*, 506 U.S. 461, 478, 122 L. Ed. 2d 260, 277, 113 S. Ct. 892, 903 (1993) (addressing " 'the likelihood of obtaining an accurate determination' in [a capital] sentencing proceeding [citation]"); see generally, G. Knapp, Annotation, *Supreme Court's views as to retroactive effect of its own decisions announcing new rules as to sentencing in criminal cases*, 122 L. Ed. 2d 837, 846, § 7 (1997).

The right to a jury trial, and particularly its companion right to a jury verdict proved beyond a reasonable doubt, stand, inviolable, for what the *Apprendi* Court termed "cogent reasons" related to accuracy:

"Prosecution subjects the criminal defendant both to 'the possibility that he may lose his liberty upon conviction and ... the certainty that he would be stigmatized by the conviction.' [Citation.] We thus require this [reasonable doubt standard], among other, procedural protections in order to 'provid[e] concrete substance for the presumption of innocence,' and *to reduce the risk of imposing such deprivations erroneously.* [Citation.] If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached." (Emphasis added.) *Apprendi*, 530 U.S. at 484, 147 L. Ed. 2d at 451, 120 S. Ct. at 2359.

The argument for extending *Apprendi* to collateral proceedings relies on the conclusion that the operative fact—the fact that leads to an enhanced sentence—becomes an element of the offense. The Supreme Court warned against a restrictive use of labels when analyzing the two factors at issue in Apprendi's sentencing—unlawful possession of a weapon and selection of victims to intimidate them because of their race: "Merely using the label 'sentence enhancement' to describe the latter [selecting victims according to race as a factor to exceed the maximum sentence] surely does not provide a principled basis for treating them differently." *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355.

In a footnote, the Court observed an increase beyond the maximum authorized statutory sentence "is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an 'element' of the offense." *Apprendi*, 530 U.S. at 494 n.19, 147 L. Ed. 2d at 457 n.19, 120 S. Ct. at 2365 n.19; see also *Apprendi*, 530 U.S. at 521, 147 L. Ed. 2d at 473, 120 S. Ct. at 2379 (Thomas, J., concurring) ("If a fact is by law the basis for imposing or increasing punishment—for establishing or increasing the prosecution's entitlement—it is an element [of the crime]").[4] But the Court again cautioned against placing form over substance: "Despite what appears to us the clear 'elemental'

---

[4]The Seventh Circuit has observed:

"Prisoners seem to think that *Apprendi* reopens every sentencing issue decided by a federal court in the last generation. It does not. All *Ap-*

nature of the factor here, the relevant inquiry is one not of form, but of effect— *does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"* (Emphasis added.) *Apprendi*, 530 U.S. at 494, 147 L. Ed. 2d at 457, 120 S. Ct. at 2365.

We take *Apprendi* to mean that once the defendant serves the prescribed maximum sentence, he or she remains in prison on a charge never made and never proved. And if we acknowledge the defendant remains in prison on a charge never made or proved, we have impugned the integrity of our criminal justice system. It is as if the sentencing judge actually said to the defendant: "I have convicted you of a charge never made against you and never heard by the jury, and I have done it based on the preponderance of the evidence." Such a conviction, and its concomitant sentence, are repugnant to our notions of fundamental fairness.

Since *Teague*, no United States Supreme Court or Illinois Supreme Court case has found a new rule qualifies for retroactivity under the second *Teague* exception.[5] But these decisions either do not involve

---

*prendi* holds is that most circumstances increasing a statutory maximum sentence must be treated as *elements* of the offense—and, if the defendant has demanded a jury trial, this means that they must be established beyond a reasonable doubt to the jury's satisfaction." (Emphasis added.) *Talbott*, 226 F.3d at 869.

[5]See *O'Dell v. Netherland*, 521 U.S. 151, 138 L. Ed. 2d 351, 117 S. Ct. 1969 (1997) (no retroactive application for *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133, 114 S. Ct. 2187 (1994), holding a capital defendant can inform the jury about parole ineligibility); *Lambrix v. Singletary*, 520 U.S. 518, 137 L. Ed. 2d 771, 117 S. Ct. 1517 (1997) (no retroactive application for *Espinosa v. Florida*, 505 U.S. 1079, 120 L. Ed. 2d 854, 112 S. Ct. 2926 (1992), holding neither the jury nor the judge can weigh invalid aggravating circumstances in capital sentencing); *Gray v. Netherland*, 518 U.S. 152, 135 L. Ed. 2d 457, 116 S. Ct. 2074 (1996) (no retroactive application for a proposed new rule regarding notice of evidence); *Goeke v. Branch*, 514 U.S. 115, 131 L. Ed. 2d 152, 115 S. Ct. 1275 (1995) (*per curiam*) (no retroactive application for a federal circuit court rule regarding the dismissal of recaptured fugitive appeals); *Caspari v. Bohlen*, 510 U.S. 383, 127 L. Ed. 2d 236, 114 S. Ct. 948 (1994) (no retroactive application for Supreme Court decisions regarding double jeopardy in capital sentencing); *Gilmore v. Taylor*, 508 U.S. 333, 124 L. Ed. 2d 306, 113 S. Ct. 2112 (1993) (no retroactive application for *Falconer v. Lane*, 905 F.2d 1129 (7th Cir. 1990), holding the trial court must give a jury instruction on mitigating mental states); (*Graham*, 506 U.S. 461, 122 L. Ed. 2d 260, 113 S. Ct. 892 (no retroactive application for Supreme Court decisions regarding mitigating evidence during sentencing); *Saffle v. Parks*, 494 U.S.

fundamental rights or do not directly implicate accuracy. They are not "bedrock" pronouncements.

For example, in *Sawyer v. Smith*, 497 U.S. 227, 111 L. Ed. 2d 193, 110 S. Ct. 2822 (1990), the Court held *Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231, 105 S. Ct. 2633 (1985), which prohibited a capital sentence if the prosecution misled the jury to believe the ultimate sentencing decision rested elsewhere, did not apply retroactively. The Court recognized the false information outlawed in *Caldwell* "might produce 'substantial unreliability as well as bias in favor of death sentences' " (*Sawyer*, 497 U.S. at 233, 111 L. Ed. 2d at 205, 110 S. Ct. at 2827, quoting *Caldwell*, 472 U.S. at 330, 86 L. Ed. 2d at 240, 105 S. Ct. at 2640), but the Court felt *Caldwell* provided merely "an additional measure of protection against error" beyond that afforded by another case (*Sawyer*, 497 U.S. at 244, 111 L. Ed. 2d at 212, 110 S. Ct. at 2832). That is:

> "The *Caldwell* rule was designed as an enhancement of the accuracy of capital sentencing, a protection of systemic value for state and federal courts charged with reviewing capital proceedings. But given that it was added to an existing guarantee of due process protection against fundamental unfairness, we cannot say this systemic rule enhancing reliability is an 'absolute prerequisite to fundamental fairness' [citation], of the type that may come within *Teague*'s second exception." *Sawyer*, 497 U.S. at 244, 111 L.

484, 108 L. Ed. 2d 415, 110 S. Ct. 1257 (1990) (no retroactive application for Supreme Court decisions regarding mitigating evidence during sentencing); *Butler v. McKellar*, 494 U.S. 407, 108 L. Ed. 2d 347, 110 S. Ct. 1212 (1990) (no retroactive application for *Arizona v. Roberson*, 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988), holding the fifth amendment bars police-instigated interrogation following a suspect's request for counsel in a separate investigation); *Teague*, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (no retroactive application for *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), holding the State may not exercise race-based peremptory challenges); *People v. Britt-El*, 206 Ill. 2d 331 (2002) (no retroactive application for *People v. Boclair*, 202 Ill. 2d 89 (2002), holding circuit court may not dismiss a postconviction petition for untimeliness at the first stage of the proceedings); *People v. Hickey*, 204 Ill. 2d 585 (2001) (no retroactive application for new Illinois Supreme Court rules for capital cases); *People v. Caballero*, 179 Ill. 2d 205, 688 N.E.2d 658 (1997) (no retroactive application for *Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492, 112 S. Ct. 2222 (1992), holding the defendant can inquire into venirepersons' opinions in support of the death penalty); *People v. Holman*, 164 Ill. 2d 356, 647 N.E.2d 960 (1995) (no retroactive application for *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411, 111 S. Ct. 1364 (1991), holding a criminal defendant may raise a *Batson* issue even though the defendant and the excused juror do not share the same race).

698

Ed. 2d at 212-13, 110 S. Ct. at 2832, quoting *Teague*, 489 U.S. at 314, 103 L. Ed. 2d at 358, 109 S. Ct. at 1077.

*Apprendi* not only safeguards fundamental fairness; its reasonable doubt standard provides the only measure of accuracy in extended sentencing. Where a new rule secures both "the accuracy of the truth-finding function" and "the fairness and the constitutional integrity of a criminal proceeding," courts have held it applies retroactively. *People v. Kubik*, 214 Ill. App. 3d 649, 657, 573 N.E.2d 1337 (1991) (*Cruz v. New York*, 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714 (1987), holding a nontestifying codefendant's interlocking confession inadmissible at a joint trial, applied retroactively to a postconviction proceeding); accord *Graham v. Hoke*, 946 F.2d 982, 994 (2d Cir. 1991); see also *People v. Ikerd*, 47 Ill. 2d 211, 213, 265 N.E.2d 120 (1970) (adopting *Roberts v. Russell*, 392 U.S. 293, 20 L. Ed. 2d 1100, 88 S. Ct. 1921 (1968)—the holding that a nontestifying codefendant's confession is inadmissible at a joint trial applies retroactively as required by "fundamental fairness").

Prior to the applicability of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) 18 U.S.C. § 2 *et seq.* (2000),[6] several federal circuit court cases considered the retroactivity of *Victor v. Nebraska*, 511 U.S. 1, 127 L. Ed. 2d 583, 114 S. Ct. 1239 (1994), *Sullivan v. Louisiana*, 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993), and *Cage v. Louisiana*, 498 U.S. 39, 112 L. Ed. 2d 339, 111 S. Ct. 328 (1990), which held jury instructions diluting the reasonable doubt standard were unconstitutional. These cases held *Cage* and its progeny fall within *Teague*'s second exception because "[t]he reasonable doubt standard guards against conviction of the innocent by ensuring the *systemic* accuracy of the criminal system" and "use of a lower standard of proof frustrates the jury-trial guarantee." (Emphasis in original.) *Nutter v. White*, 39 F.3d 1154, 1157-58 (11th Cir. 1994) (*Cage* applied retroactively); accord *Gaines v. Kelley*, 202 F.3d 598 (2d Cir. 2000) (*Cage* applied retroactively); *Humphrey v. Cain*, 138 F.3d 552 (5th Cir. 1998) (*en banc*), *aff'd*, 120 F.3d 526 (5th Cir. 1997) (*Victor/ Cage* applied retroactively); *Harmon v. Marshall*, 69 F.3d 963 (9th Cir. 1995) (*Sullivan* applied retroactively); *Adams v. Aiken*, 41 F.3d 175 (4th Cir. 1994) (*Sullivan* applied retroactively); see also *Nevius v. Sumner*, 105 F.3d 453, 462 (9th Cir. 1996) (*prima facie* showing the

---

[6]For a new rule of constitutional law to be applied retroactively to cases on collateral review under the AEDPA, the United States Supreme Court must hold that the new rule is retroactively applicable to cases on collateral review. *Tyler v. Cain*, 533 U.S. 656, 662, 150 L. Ed. 2d 632, 642, 121 S. Ct. 2478, 2482 (2001).

Supreme Court made *Cage* retroactive to *habeas corpus* cases); *cf. Ivan V. v. New York*, 407 U.S. 203, 32 L. Ed. 2d 659, 92 S. Ct. 1951 (1972) (*In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970), holding the reasonable doubt standard governs juvenile delinquency proceedings, applied retroactively).[7]

*Flowers* can be distinguished. In *Flowers*, the Illinois Supreme Court held *People v. Reddick*, 123 Ill. 2d 184, 526 N.E.2d 141 (1988), did not apply to cases on collateral review. The *Reddick* court had found unconstitutional jury instructions that erroneously stated the burden of proof for voluntary manslaughter mitigating mental states.

---

[7]Other post-*Teague* federal circuit court cases have held new rules apply retroactively under the second exception. See, *e.g.*, *Williams v. Dixon*, 961 F.2d 448 (4th Cir. 1992) (retroactive application for *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, 110 S. Ct. 1227 (1990), and *Mills v. Maryland*, 486 U.S. 367, 100 L. Ed. 2d 384, 108 S. Ct. 1860 (1988), holding a jury instruction requiring unanimity in finding mitigating evidence was unconstitutional); *Ostrosky v. Alaska*, 913 F.2d 590 (9th Cir. 1990) (retroactive application for a trial court decision holding unconstitutional the statute under which the defendant was convicted); *Hall v. Kelso*, 892 F.2d 1541 (11th Cir. 1990) (retroactive application for *Francis v. Franklin*, 471 U.S. 307, 85 L. Ed. 2d 344, 105 S. Ct. 1965 (1985), and *Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979), holding burden-shifting jury instructions were unconstitutional).

Additionally, several pre-*Teague*, United States Supreme Court cases held new rules were retroactively applicable. See *Price v. Georgia*, 398 U.S. 323, 26 L. Ed. 2d 300, 90 S. Ct. 1757 (1970) (rule applying the double jeopardy prohibition to the States); *McConnell v. Rhay*, 393 U.S. 2, 21 L. Ed. 2d 2, 89 S. Ct. 32 (1968) (rule requiring counsel at a probation revocation hearing); *Arsenault v. Massachusetts*, 393 U.S. 5, 21 L. Ed. 2d 5, 89 S. Ct. 35 (1968) (rule barring evidence of a guilty plea from a preliminary hearing without counsel); *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770 (1968) (rule precluding dismissal of jurors who generally object to the death penalty); *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964) (rule outlining judicial procedures for determining the voluntariness of a confession); *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963) (rule requiring counsel on appeal); *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963) (rule requiring counsel at trial); *Hamilton v. Alabama*, 368 U.S. 52, 7 L. Ed. 2d 114, 82 S. Ct. 157 (1961) (rule requiring counsel at arraignment); *Griffin v. Illinois*, 351 U.S. 12, 100 L. Ed. 891, 76 S. Ct. 585 (1956) (rule providing an indigent defendant with a free transcript). See generally G. Chamberlin, Annotation, *United States Supreme Court's Views as to Retroactive Effect of Its Own Decisions Announcing New Rules*, 65 L. Ed. 2d 1219 § 5[d] (1980).

The *Flowers* court recognized *Reddick* involved a "grave" jury instruction error "of constitutional dimension" (*Flowers*, 138 Ill. 2d at 236-37), but declined to place a *Reddick* error within *Teague's* second exception: "This exception must be narrowly construed and we do not believe that the *Reddick* rule established such a component of basic due process so as to fall within it." *Flowers*, 138 Ill. 2d at 242.

*Reddick* discussed the constitutional obligation of the jury to follow the trial judge's instructions (see *People v. Jenkins*, 69 Ill. 2d 61, 66-67, 370 N.E.2d 532 (1977)), but, unlike *Victor*, *Cage*, *Sullivan*, or now *Apprendi*, it did not implicate the right to a jury verdict beyond a reasonable doubt and, consequently, the fundamental fairness and accuracy concerns inherent in the second *Teague* exception.

*Apprendi* tells us we deal with "constitutional protections of surpassing importance." *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 447, 120 S. Ct. at 2355. The reasonable doubt standard " ' "reflect[s] a profound judgment about the way in which law should be enforced and justice administered." ' " *Apprendi*, 530 U.S. at 478, 147 L. Ed. 2d at 447-48, 120 S. Ct. at 2356, quoting *Winship*, 397 U.S. at 361-62, 25 L. Ed. 2d at 374, 90 S. Ct. at 1071, quoting *Duncan v. Louisiana*, 391 U.S. 145, 155, 20 L. Ed. 2d 491, 499, 88 S. Ct. 1444, 1451 (1968). Our jury tradition is "an indispensable part of our criminal justice system." *Apprendi*, 530 U.S. at 497, 147 L. Ed. 2d at 459, 120 S. Ct. at 2366. How, then, could we say we do not deal with procedures that are implicit in the concept of ordered liberty? Have we not reached "bedrock"?

We view the gravity of an *Apprendi* violation within the narrow window of retroactivity established by the courts. Finding retroactivity never should be lightly done. Can we say the likelihood of an accurate conviction in this case is seriously diminished? If we conclude there is a certainty of inaccurate conviction since Beachem was convicted of a crime never charged or proved, it follows that Beachem's imprisonment beyond the maximum sentence violates established principles of fundamental fairness.

■ We understand the implications of extending *Apprendi* to collateral review. But we do what we believe the law requires. Our constitutional history teaches us we best survive when we hew to the line drawn by the rule of law. Because, under *Teague*, we conclude *Apprendi* implicates procedures implicit in the concept of ordered liberty, we find *Apprendi* applies to a timely filed postconviction petition.

Because *Apprendi* applies, we turn to the merits of Beachem's claim that her sentence is unconstitutional.[8]

■ The State initially contends Beachem waived this issue when she failed to include it in her postconviction petition. But *Apprendi* was decided nearly 18 months after the trial court denied her petition. Beachem instead raised *Apprendi* in a supplemental brief before this court shortly after it was decided. Beachem did not forfeit her right to review of her extended sentence in light of *Apprendi*. *People v. Lathon*, 317 Ill. App. 3d 573, 740 N.E.2d 377 (2000); see *People v. Wooters*, 188 Ill. 2d 500, 510, 722 N.E.2d 1102 (1999) ("although defendant neglected to raise this issue before the circuit court, the constitutional dimension of the question permits this court to address defendant's argument").

■ Post-*Apprendi* decisions of the Illinois Supreme Court support the State's claim that Beachem was properly sentenced.

Here, as in *People v. Ford*, 198 Ill. 2d 68, 761 N.E.2d 735 (2001), the trial court, before sentence was imposed, found, beyond a reasonable doubt, Beachem was eligible for the death penalty. That means her sentence of 90 years is not beyond the maximum prescribed by law.

In addition, Beachem was charged with committing a robbery on a victim over 60 years of age. The issues instructions for the robbery charge required the jury to find beyond a reasonable doubt the victim was over 60 before it could convict. Thus, the jury's guilty verdict was a finding that the murdered victim of the robbery was over 60. That is sufficient to permit the trial judge to sentence defendant to an extended term under the statutory scheme established in section 5—5—3.2 (730 ILCS 5/5—5—3.2 (West 1994)). *People v. Hopkins*, 201 Ill. 2d 26, 773 N.E.2d 633 (2002). *Apprendi* was not violated in this case.

## CONCLUSION

We affirm the trial court's summary dismissal of the defendant's postconviction petition.

Affirmed.

BURKE and HALL, JJ., concur.

---

[8]Beachem attempts to shortcut this question, contending a sentence that does not conform to a statutory requirement is void. See *People v. Arna*, 168 Ill. 2d 107, 113, 658 N.E.2d 445 (1995). We find *Arna* does not apply. Beachem's sentence conformed to all statutory requirements. We must decide whether her sentence conformed to *Apprendi*'s constitutional requirements.